RAYMOND McCRANK v. GREAT NORTHERN RAILWAY COMPANY.

109 N. W. (2d) 582.

June 16, 1961—No. 38,226.

*Anthony Kane, L. E. Torinus,* and *D. E. Engle,* for appellant.
*Eugene A. Rerat,* for respondent.

NELSON, JUSTICE.

Appeal from an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial.

Plaintiff, Raymond McCrank, was injured on June 19, 1959, as a result of an accident which occurred while he was working as a welder for the defendant, Great Northern Railway Company, in St. Paul. The accident occurred in a building where equipment was located for the manufacture of acetylene gas. New equipment was being installed at the time of the injury. However, one generator and a storage tank remained in the building. Plaintiff was in the process of welding in connection with the improvement when the welding torch ignited acetylene gas remaining within the storage tank, causing the explosion.

As a result of the explosion, plaintiff suffered an injury to his back in which the spinal cord was severed at the junction of the seventh cervical and first dorsal vertebrae causing a complete loss of motor function, control, and sensation below this area. As plaintiff testified, he could not feel anything from his chest down. The severance also affected the use of his hands and medical opinions on the extent of this disability varied from 75 percent to 100 percent. The jury returned a verdict of $500,000.

The defendant does not question liability on this appeal but raises the following issues:

(1) Was the verdict of $500,000 excessive and not justified by the evidence?

(2) Was the verdict excessive, appearing to have been given under the influence of passion and prejudice which arose by the misconduct of counsel for plaintiff in his closing argument?

(3) Was counsel for plaintiff guilty of misconduct by stating in his closing argument facts not supported by the evidence?

Defendant submits that the special damages, including compensation for past and future wages lost, future hospital and medical expenses, and future attendants needed, could not have exceeded $165,598.40. Plaintiff on the other hand submits that his special damages, compensating him for the above items, amount to $334,136.90.

A review of the record indicates evidentiary support for the verdict if it was based on plaintiff's computations. There is also evidence which would support a verdict based on defendant's computations.

The two items which account for the large disparity are the future wage loss and the future cost of an attendant.

Plaintiff computes his future wage loss on the basis of his average life expectancy of 21.3 years, which results in an amount, discounted at 3½ percent, of $79,835.05. Defendant on the other hand computes the future wage loss on the basis of plaintiff's "work life expectancy" of 11.57 years which, discounted at 3½ percent, totals $49,183.00. Both amounts were computed on the basis of plaintiff's actual earnings at the time of the injury.

With respect to this element, defendant cites Hallada v. G. N. Ry. 244 Minn. 81, 95, 69 N. W. (2d) 673, 685, wherein this court, in reviewing the verdict and granting a new trial unless plaintiff consented to a reduction from $170,154.80 to $105,000, stated:

"* * * Life expectancy and earning expectancy are not synonymous since a person may live longer than he is capable of pursuing gainful employment."

As to the item of future attendants, defendant bases its computation on the cost of an attendant at $350 per month for 21.3 years, discounted at the rate of 3½ percent, or a total of $61,790.40. Plaintiff on the other hand computed the cost of future attendants on the basis of three shifts of practical nurses per day at $12 per shift, or $36 per day, for 21.3 years, discounted at 3½ percent, resulting in a total of $198,680.41.

Defendant cites Ahlstrom v. Minneapolis, St. P. & S. S. M. R. Co. 244 Minn. 1, 68 N. W. (2d) 873. That case involved a paraplegic,

who was paralyzed from his waist down. The jury returned a verdict of $275,000 and this court granted a new trial unless plaintiff would consent that the verdict be reduced to $175,000. There, the jury apparently awarded $86,347.98 for the future cost of a daily attendant, the only evidence with respect to such cost being the opinion of a doctor that it would be about $10 per day. We concluded that it was (244 Minn. 28, 68 N. W. [2d] 890) "unrealistic to predicate the assessment of plaintiff's damage therefor exclusively on the cost of an attendant employed on a day-to-day basis."

Also in that case an apparent award of $70,000 for pain and suffering was regarded as not justified by the evidence. Pointing out that such damages cannot be reduced to mathematical formulae, we emphasized that (244 Minn. 30, 68 N. W. [2d] 891) "[t]his is especially true in plaintiff's case where his loss of sensory perception will limit his pain and suffering to mental reactions of embarrassment, humiliation, and frustration based upon his personality traits and which should greatly decrease as time passes."

Comparing the instant case to the Ahlstrom case, that case involved a paraplegic, 21 years of age, and a verdict of $275,000; this case, a quadriplegic, 51 years of age, and a verdict of $500,000. In the Ahlstrom case the court did not find passion or prejudice on the part of the jury in arriving at its verdict and apparently the size of the verdict did not of itself suggest passion and prejudice. However, the court explained that the excessive verdict apparently resulted from the unwitting acceptance by the jury of the figures submitted by the plaintiff. It would not seem in the instant case that the verdict suggested passion and prejudice in view of the fact that if the jury awarded special damages as plaintiff computed them, they would amount to $334,136.90, leaving a balance of $165,863.10 to compensate the plaintiff for humiliation, embarrassment, and pain and suffering.

Accordingly, the verdict, although excessive, does not appear to be premised on passion and prejudice in the instant case. However, in view of the principle announced in the Hallada case relative to life expectancy and work life expectancy and in the Ahlstrom case relative to per-diem and per-month computation of the cost of an attendant, it would not appear that either party's computations with

respect to these items could be accepted exclusively. Neither the work life expectancy table nor the life expectancy table could be considered conclusive as to what plaintiff's earning capacity would have been had he not been injured. Likewise, it would not appear that either a per-diem formula or a per-month formula as to the future cost of attendants would be conclusive since, even though an effort were made to hire an employee to serve continuously as an attendant, he could not be expected to work 100 percent of the time. Consequently, other services would have to be obtained.

In view of the foregoing, we believe that the damages with respect to these items are excessive.

We also find the verdict excessive upon application of the principle recognized in the Hallada case (244 Minn. 98, 69 N. W. [2d] 687):

"* * * No recognized theory of damages or principle of common sense requires that plaintiff, *over and beyond his damages,* be endowed with an estate at the conclusion of his life expectancy."

Thus, the verdict must stand the test of reasonableness in the light of its over-all effect. We believe that the verdict here resulted from a reliance upon a mathematical formula, without testing the reasonableness of the award in the light of its over-all effect.

The granting of a new trial because of the misconduct of counsel for the prevailing party rests within the discretion of the trial judge and his decision will not be reversed unless there is an abuse of discretion. Hallada v. G. N. Ry. *supra.* Since the excessive verdict here appears to have resulted from a reliance solely upon a mathematical formula without testing the reasonableness of the amount awarded from the standpoint of its over-all effect, we cannot say, assuming there was misconduct, that the trial court abused its discretion in denying a new trial on this ground.

The order appealed from is reversed and a new trial is granted unless within 10 days the plaintiff shall file a written consent that the verdict be reduced to the sum of $325,000, and in that event the order shall be and is affirmed.