# ERLING LARSEN AND OTHERS v. MINNEAPOLIS GAS COMPANY AND OTHERS.
## BARBAROSSA AND SONS, INC., THIRD-PARTY DEFENDANT.

163 N. W. (2d) 755.

December 13, 1968—Nos. 40645, 40790.

136

*Meagher, Geer, Markham & Anderson, O. C. Adamson II, William D. Flaskamp,* and *Alonzo B. Seran,* for appellant.

*Robb, Robb & Van Eps,* for respondent Barbarossa.

*Hvass, Weisman, King & Allen,* for respondents Larsen.

FRANK T. GALLAGHER, JUSTICE.

In this action for damages caused by an explosion resulting from the rupture of a gas main, defendant and third-party plaintiff, Minneapolis Gas Company, appeals from an order of the District Court of Hennepin County denying its motion for a new trial on all the issues or, in the alternative, for a new trial on the issue of damages alone, and from the judgment entered.

In 1952, appellant (hereafter Gas Company) installed a gas main on Third Avenue South in Bloomington, approximately 4 feet below the surface, using new 4-inch cast iron pipe. In 1960 the city of Bloomington contracted with defendant Barbarossa and Sons, Inc. (Barbarossa) to install sewer and water facilities in an area including Third Avenue South. The contract placed full responsibility on Barbarossa for meeting plans and specifications, compacting with a vibratory roller over all excavations, and seeing that all utility facilities were protected and repaired.[1] As was the custom in the industry, Barbarossa subcontracted

---

[1] The contract provided in part: "The entire work to be performed under the contract for this improvement is to be at the Contractor's risk, and he is to assume the responsibility for and risk of all damages to the work or to property adjacent to or on the line of said work. The Contractor shall have

for a good part of the work. Defendant Edina Excavating Company (Edina), a partnership composed of L. Eugene and John J. Delaney, was awarded the job of installing sewer stubs running from the main sewer, which Barbarossa laid down the center of the street, to the property lines of the houses. In order to install the stubs it was necessary to uncover and dig under the previously installed gas main.

The usual procedure was for Barbarossa to work one or two days in advance of Edina, laying the main sewer at a depth of 10 or 11 feet down the center of the street. Barbarossa filled its trench before Edina began excavating. When Edina arrived, it would dig a sloping trench 12 feet wide at the top and about 30 inches wide at the bottom to a depth of about 9 feet with a truck-mounted "backhoe," starting at the property

---

charge of and be responsible for the entire improvement until its completion and acceptance. * * *

\* \* \* \* \*

"All damage done to existing improvements during the progress of this improvement shall be repaired by the Contractor under the direction of the Village Engineer. * * *

\* \* \* \* \*

"* * * The Contractor shall be responsible for all damages or injury to property of any character resulting from any act, omission, neglect or misconduct in the manner or method of executing the work * * * or at any time due to defective work or materials. He shall restore, or have restored at his own cost and expense, such property to a condition similar or equal to that existing before such damage or injury was done * * *. * * *

\* \* \* \* \*

"The Contractor is to exercise extreme care in crossing or working adjacent to all utilities and shall be responsible to protect and maintain their operation during the time the work is in progress. * * *

\* \* \* \* \*

"* * * Any breakage of gas lines shall be the responsibility of the Contractor and it shall be his responsibility to contact the Gas Company prior to any excavating.

\* \* \* \* \*

"After the trenches for the sewer and water lines and services have been backfilled and graded, they shall be compacted with an approved vibratory compacting roller over the full width of the excavated area. Compacting shall continue until no further settlement occurs."

line and working out to the sewer main. After the stub was installed the dirt would be compacted with a hand tamper up to about 1 foot over the stub. The remaining dirt would be put back into the trench with a front-end loader weighing about 15,000 pounds, which would cause some further compaction as it was driven in and over the excavation. In the course of digging the trenches, Edina had, on at least two occasions, struck the gas main while trying to dig around it. When this happened, Edina called the Gas Company, which came out immediately and repaired the damage. The cost of the repairs was paid by Edina.

On April 22, 1960, Edina installed a sewer stub in front of plaintiffs' home at 8601 Third Avenue South. The usual procedure was followed. Neither the Gas Company nor Barbarossa was notified that the gas main had been damaged. John Delaney, who had been operating the backhoe on that occasion, testified that the main had not been struck or damaged in any way during the installation.

On November 20, 1963, there was an explosion in plaintiffs' house while Sandra Larsen and her 2-year-old son, Steven, were inside. Both were badly burned. Sandra, Erling Larsen, her husband, and Steven, by his father, each brought action against the Gas Company, joining Barbarossa and Edina as defendants. Each of the defendants cross-claimed for contribution or indemnity.

In the course of the trial, testimony was introduced to the effect that the explosion was caused by gas which escaped through a break in the main just over the sewer stub; the main had gouge marks such as might be made by the tool steel of a backhoe shovel, linear cracks, and a split in the pipe. When the main was uncovered, there was a .09-foot slant in the pipe toward the split from both directions. Experts testified that the failure to compact the trench when the sewer stub was installed removed the support under the main so that, weakened by the gouge, it "gave" under pressure from the dirt above.

The Bloomington-Barbarossa contract was introduced to show that Barbarossa had a duty to compact on the entire project with a vibratory roller; Barbarossa's supervisor on the project testified that this was not done. John Delaney stated that Edina did not expect Barbarossa to do any compacting within the trench itself; that Edina did not do any, and

that no objection was made to Edina's installation procedure by Barbarossa, Bloomington, or the Gas Company, all of whom had observed it. There was substantial conflict in the expert testimony as to what effect vibratory-roller compaction at the surface would have had on the 6-foot area above the sewer stub and below the gas main. Other expert testimony was submitted to show that the pipe the Gas Company had installed in 1952 was defective and should have been rejected. One expert testified that it could not have withstood the tests which the manufacturer claimed had been run on it prior to shipment to the Gas Company.

On the issue of damages, medical testimony was submitted about the injuries sustained by Sandra and Steven, along with numerous photographs and hospital records. Erling and Sandra testified on their own behalves. Although the evidence offered comprises but a small part of a voluminous record, it presents a graphic description of the injuries they sustained. Sandra is badly scarred on the face, shoulders, and back; past and future hospitalization will total about 9 months and involve about 26 surgical procedures by a plastic surgeon; she is uncomfortable with anyone but close friends and no longer leaves the house without her husband or some other close relative; she is no longer able to water-ski or ice-skate, due to the effect of sun and cold on the scarred areas; and her ability to perform normal household and garden chores has been impaired.

Steven has extensive facial scarring which, although permanent, should improve as he grows older; he spent 55 days in the hospital; no skin grafting was done during that time and future plans indicate only minor cosmetic surgery on one ear and skin grafts on the right hand to restore presently limited motion; the scarred areas are affected by sun and cold. Testimony indicated that the sales field is closed to him, and his potential employability generally has been curtailed to some extent as a result of the damage to his appearance.

Erling Larsen's past and future medical expenses for Sandra and Steven and the property damage to his home total $55,820.92, of which $38,972.63 is for medical costs and household help. Sandra is no longer willing to make new friends, and the couple's entertainment is confined

to visits to the homes of close friends, although previously they had played in mixed bridge clubs and played tournament bridge, water-skied, skated, bowled in mixed leagues, and attended programmed dances. It is now necessary for Erling to accompany Sandra to places such as the grocery store, to which she had previously gone alone. Her physical appearance has been significantly altered by the accident.

The case was submitted to the jury on a general verdict with written interrogatories, and it found for plaintiffs against all defendants in the following amounts: Sandra, $300,000; Steven, $150,000; and Erling, $125,000. In its answers to the written interrogatories the jury found that the duty to compact the soil with a vibratory roller was Barbarossa's and its failure to do so was negligence, but that this negligence was not a proximate cause of the accident; that the Gas Company was negligent in laying defective pipe, and this negligence was a proximate cause of the accident; and that Edina was negligent in damaging the gas main, and this negligence was a proximate cause of the accident. It found that Edina was not negligent in failing to compact the soil in the trench.[2]

Following the verdict, the Gas Company moved to have the answers

---

[2] The interrogatories submitted and the jury's answers were as follows:

"1. Did the defendant, Edina, negligently damage the gas main involved herein during the operation of its backhoe?

"Answer: Yes.

"A. If your answer is 'Yes,' was such damage to the gas main a proximate cause of its failure and the resultant explosion?

"Answer: Yes.

"2. Did the defendant, Edina, fail to exercise reasonable care to compact the backfill in the sewer lateral-stub trench under and adjacent to the gas main?

"Answer: No.

"3A. From the written agreement between Barbarossa and Edina, and the specifications, whose obligation was it to compact the sewer lateral trench with a vibratory roller?

"Answer: Barbarossa.

"3B. From all of the evidence, including conversations between Barbarossa and Edina, as well as the written agreement and the specifications, whose obligation was it to compact the sewer lateral trench with a vibratory roller?

"Answer: Barbarossa.

finding it negligent and its negligence a proximate cause of the accident changed from "Yes" to "No" and to have the answer stating that Barbarossa's negligence was not a proximate cause of the accident changed to "Yes"; for judgment notwithstanding the verdict; a new trial; or for indemnity from Barbarossa and Edina. Barbarossa and Edina also made post-verdict motions, the content of which is not material here. Pursuant to agreement, the trial judge ruled on the motions contemporaneously with his order for judgment. In his findings of fact the judge incorporated the answers of the jury, adding that Barbarossa could not be expected in the exercise of ordinary care to have discovered the unsafe condition of the pipe or Edina's act of striking it. Therefore, the court held, the Gas Company and Edina were entitled to contribution inter se, but Barbarossa was entitled to indemnity from both Edina and the Gas Company.

All parties agree that the verdict in favor of Sandra Larsen is reasonable and it is not challenged here. Only the Gas Company has appealed and it raises two issues: (a) Whether the trial court erred in granting Barbarossa indemnity and denying the Gas Company contribution from

---

"3C. Was the failure to perform such vibratory roller compaction negligence?

"Answer: Yes.

"3D. If your answer to the question immediately above is 'Yes,' was such failure to perform such vibratory roller compaction on the sewer lateral-stub trench a proximate cause of the gas main failure and the resultant explosion?

"Answer: No.

"[Question on odorant in the gas, which is not involved here.]

"5. Was the cast iron pipe in question in an unsafe condition when placed in the ground for use as a gas main by defendant, Minneapolis Gas Company?

"Answer: Yes.

"A. If your answer is 'Yes,' was such unsafe condition a proximate cause of the failure in the gas main and the resultant explosion?

"Answer: Yes.

"6. Was the defendant, Minneapolis Gas Company, negligent in failing to discover that Barbarossa or Edina did not properly compact the fill under and adjacent to its pipe?

"Answer: No."

Barbarossa; and (b) whether the verdicts in favor of Erling Larsen and Steven Larsen are grossly excessive.

■ In support of its claim for contribution, the Gas Company argues that it was error for the trial court to find, as it did, that the only liability of Barbarossa was vicarious, based on its relationship with its subcontractor Edina. It points to our recent case of Thill v. Modern Erecting Co. 272 Minn. 217, 136 N. W. (2d) 677, as establishing the equal liability of Barbarossa and Edina and rendering any award of indemnity to Barbarossa improper.

In Thill it was held that the general contractor, Johnson, Drake & Piper, Inc. (J. D. & P.) was equally liable with its subcontractor, Modern Erecting Co. (Modern) for injuries sustained by an employee of another subcontractor when a crane fell on him. The court stated that a general contractor who retains general control and supervision of the work is liable for the torts of his subcontractors since he, like an owner of land, is bound to exercise reasonable control over the activities carried on under his supervision or on the land under his control, and pointed to facts tending to show that the general contractor, through its foreman, had ample opportunity to observe and correct the negligent acts of its subcontractor. The court concluded in Thill that the facts did not set forth a case of failure to discover the preexisting negligence of another, but rather one of equal responsibility for the existence of the unsafe condition, and that therefore the defendants should be required to share the liability for the resulting damage. The Gas Company contends that the present case is, if anything, a stronger case for contribution than was Thill since we are dealing here with a public as opposed to a private contract and one establishing specific safety obligations rather than just requiring reasonable care.

A careful reading of the opinion in Thill satisfies us that the fact situation in that case was different from the case before us. There it was not the fact that J. D. & P. had a foreman on the job site that caused the court to deny its request for indemnity from Modern. Rather, it was the fact that the foreman observed the crane being set up and had ample opportunity to correct the negligent failure of Modern's employees to put pins in, and to otherwise properly support the outriggers, that formed

the basis of the court's action. Further, in Thill the crane operated for a period of time during which the negligence of Modern's employees became increasingly apparent. In the present case the evidence shows that Barbarossa had no employees, supervisory or otherwise, in the immediate area when Edina struck the gas main. Barbarossa therefore could not have been aware of that negligent act. The only act of which Barbarossa could have been aware was the failure of Edina to compact the trenches as it filled them, and the jury specifically found that the failure to compact was not negligence. None of the parties to this action have challenged that finding.

As we have pointed out, it was not the general safety provision of the private contract in Thill that established the equal liability of J. D. & P. Neither can it be said that the public contract between Barbarossa and the city of Bloomington establishes Barbarossa's equal liability in this case. It is true that the contract does not recognize subcontractors. However, the testimony indicated that the use of subcontractors was the accepted practice in the industry and that the contract was not intended to prohibit their use on the sewer and water project. It seems clear that the purpose of the city in drawing the contract as it did was to protect itself in the event any of the work was improperly done or property of the city, of public utilities, or of private parties was damaged.

Under the Barbarossa-Edina contract, Edina was bound by all the provisions of Barbarossa's contract with the city applicable to the portion of the work it was to perform. The Gas Company's recognition of this is demonstrated by the procedure that was followed when Edina struck gas mains on other occasions. It was Edina that notified the Gas Company of the damage and it was from Edina that the Gas Company sought and received payment for the cost of making the necessary repairs. Under these circumstances, Barbarossa's liability to third parties for damages resulting from Edina's negligence in the performance of work under its contract with Barbarossa can only be vicarious in the absence of a showing that Barbarossa had an equal opportunity to prevent that negligence.

The Gas Company argues that the evidence does not support the finding of the trial court that the only negligence of Barbarossa was that

imputed to it by virtue of its relationship with Edina. We cannot agree. Under the instructions given the jury, to which no exceptions were taken, a finding of negligence on the part of Edina required a similar finding against Barbarossa as a matter of law. Consistent with this, the jury was not given a verdict form on which it could find against Edina but not Barbarossa. The only other instruction specifically applicable to Barbarossa was to the effect that it was required to comply with all the compaction specifications in its contract with Bloomington. This was a reference to the failure of Barbarossa to use a vibratory roller, which the jury found was not a proximate cause of the accident.

While it may be that we would have found otherwise had we been called upon to decide this question in the first place, our authority here is limited to determining whether the evidence, viewed in the light most favorable to the jury's finding, will sustain it. Sjodin v. Lund, 277 Minn. 473, 476, 152 N. W. (2d) 718, 721. We concur in the trial court's conclusion that the finding is sustained by the evidence. There was testimony that vibratory-roller compaction on this type of soil would not have been effective more than 2½ feet below the surface and that no satisfactory compaction could be achieved in this type of soil even if tamping were done at 1-foot intervals from the base of the trench. Further, the finding of the jury here is consistent with its finding that Edina's failure to compact in the trench was not negligence, and the propriety of that finding is not in issue.

Other theories on which Barbarossa might have been included in the jury's verdict have not been suggested by the Gas Company, and we can conceive of none. No instructions were given on possible liability for failure to properly supervise the work of Edina and the trial court's finding that Barbarossa could not be expected in the exercise of due care to have discovered that Edina struck the gas main or that the Gas Company had installed defective pipe is amply supported by the evidence. No interrogatories dealing with the negligence of Barbarossa, other than those concerned with vibratory-roller compaction, were submitted to the jury. Therefore, after reviewing the record in its entirety and examining the authorities cited by the Gas Company, we are of the

opinion that the conclusion of the trial court that Barbarossa's only liability was vicarious must be sustained.

However, this conclusion does not dispose of the matter. A far more difficult question is raised by the relationship of the parties in this case. It is the contention of the Gas Company that even if Barbarossa is only vicariously liable, it still is not entitled to indemnity from the Gas Company and therefore the Gas Company should be entitled to contribution from Barbarossa. On the basis of our conclusion above, the right of Barbarossa to indemnity from Edina is clear. Hendrickson v. Minnesota Power & Light Co. 258 Minn. 368, 104 N. W. (2d) 843. However, the Gas Company takes the position that there is no relationship between it and Barbarossa which would justify the trial court's holding that the Gas Company must indemnify Barbarossa; that it is the negligence of Edina, not the Gas Company, that makes Barbarossa liable to the plaintiffs.

In support of its position, the Gas Company suggests this hypothetical: An employee and a Mr. X are both guilty of negligence and their negligence combines to injur a third person who recovers a judgment against the employer and Mr. X. The Gas Company asks whether the employer is entitled to indemnity from Mr. X and, citing Knell v. Feltman, 85 App. D. C. 22, 174 F. (2d) 662, answers "No." In Knell, suit was brought by passengers in a car which collided with a cab and upon a verdict for plaintiffs against the cab owner, he sought and was granted contribution from the other driver. The implication is that since the cab owner (Barbarossa in this case) was awarded contribution, he was not entitled to indemnity from the other driver (the Gas Company here).

A review of the Minnesota decisions dealing with indemnity indicates that the question before us is one of first impression in this state and indeed, as far as we have been able to determine, in any state. It is therefore unfortunate that neither of the parties here saw fit to discuss the long-range implications of our decision on this issue in either their briefs or their arguments. In Hendrickson v. Minnesota Power & Light Co. *supra,* we set out five general situations in which a defendant is entitled to indemnity under Minnesota law. In each of these situations the right to indemnity is based on a relationship between the one seeking

indemnity and the "one sought to be charged." 258 Minn. 372, 104 N. W. (2d) 848. Since the finding of the trial court that Barbarossa was not negligent in failing to discover the defective pipe is amply supported by the evidence, there is no legal relationship, direction of Barbarossa by the Gas Company, breach of duty by it, or negligence on its part which would make Barbarossa liable to the plaintiffs, and there clearly was no contractual relationship calling for indemnification. In the later case of Larson v. City of Minneapolis, 262 Minn. 142, 148, 114 N. W. (2d) 68, 72, we said:

"* * * In [Hendrickson v. Minnesota Power & Light Co.] we outlined a general classification of situations where indemnity might be allowed. We recognize that indemnity is essentially an equitable doctrine which does not lend itself to hard-and-fast rules. Being an equitable doctrine, its application is particularly appropriate in a case such as this where it is invoked to protect one who is legally liable but morally innocent against one whose wrongful conduct or omission has caused liability to be imposed on him."

Thus, although recognizing that indemnity as a doctrine of equity might be appropriate in situations other than those listed in Hendrickson, we still required a causal connection between the acts of the indemnitor and the liability of the indemnitee. The same may be said of all our decisions in this area.[3]

Therefore, since the Gas Company was not responsible for Barbarossa's liability to the Larsens, we are compelled by the great weight of authority to hold that the trial court erred in granting Barbarossa indemnity from the Gas Company. So holding, we must now consider whether a right of contribution exists between the Gas Company and Barbarossa.

---

[3] E. g., Roberts v. Donaldson, 276 Minn. 72, 149 N. W. (2d) 401; Sjodin v. Lund, 277 Minn. 473, 152 N. W. (2d) 718; Brasch v. Wesolowsky, 272 Minn. 112, 138 N. W. (2d) 619; Thill v. Modern Erecting Co. 272 Minn. 217, 136 N. W. (2d) 677; Daly v. Bergestedt, 267 Minn. 244, 126 N. W. (2d) 242; Hanson v. Bailey, 249 Minn. 495, 83 N. W. (2d) 252; cf. White v. Johnson, 272 Minn. 363, 137 N. W. (2d) 674.

The essence of the Gas Company's claim, as we understand it, is that the verdict should have been split equally among the three defendants, each paying the plaintiffs one-third of the total. It is to be noted that because of the right of Barbarossa to indemnity from Edina, this would ultimately result in Edina's paying two-thirds of the verdict and the Gas Company one-third. While it might initially appear that Edina could then recover part of its disproportionate payment from the Gas Company, since there is a right of contribution between the two, this is not the case. It is well established in this state that common liability is an absolute prerequisite to contribution among joint tortfeasors, Employers Mutual Cas. Co. v. Chicago, St. P. M. & O. Ry. Co. 235 Minn. 304, 309, 50 N. W. (2d) 689, 693, and as to the obligation of Edina to indemnify Barbarossa, there is no common liability between Edina and the Gas Company.

This analysis of the case is not without its problems, however. Contribution, like indemnity, is an equitable doctrine. Hendrickson v. Minnesota Power & Light Co. 258 Minn. 368, 370, 104 N. W. (2d) 843, 846. It does not appear equitable to require one defendant to pay two-thirds of the verdict where the jury has determined that there were two distinct negligent acts which combined to cause the accident and that defendant's liability is based on its responsibility for only one of those acts. Further, there does not appear to be any case law supporting such a result. In Knell v. Feltman, *supra,* cited by the Gas Company in connection with its hypothetical, the employer was granted contribution against the other driver in the amount of one-half of the verdict without regard to his rights against his employee. Applying the result reached in that case to the facts of this one, if Barbarossa paid the full amount of the judgment to plaintiffs, it could recover one-half of that amount from the Gas Company without regard to the financial condition of Edina; and, if Edina proved solvent, as it is, Barbarossa, under its right of indemnity, could then recover from Edina the half it had paid, which would leave the verdict split equally between the Gas Company and Edina.

What we are primarily concerned with here is the initial division of the verdict among the defendants. The basic question is whether that

division should include a defendant who is only vicariously liable. In the present case the question is whether the verdict should be split in half or in thirds. We conclude that a defendant who is only vicariously liable should not be included and, therefore, that here the verdict was properly split in half. We base this conclusion on the nature of vicarious liability. It is only because someone else was negligent that the one who is vicariously liable must pay. In the present case, if the negligence of Edina were somehow eliminated, then Barbarossa would not be liable at all, either to the plaintiffs or to the Gas Company for contribution. It is only through the legal relationship between Barbarossa and Edina that the Gas Company can claim that Barbarossa is required to pay part of the plaintiffs' damages. The rights of the plaintiffs against Barbarossa are identical to and have the same limits as their rights against Edina and it seems to us that the same should be true of the rights of the Gas Company against Barbarossa.

Contribution cases such as Knell v. Feltman, *supra*, tend to support this result. Since that case held that the cab owner was entitled to contribution from the other driver in the amount of one-half of the verdict, it follows that had the driver satisfied the judgment he could have claimed the same amount from the owner of the cab. The common liability runs both ways. However, the same argument can be applied with equal force to the rights of the other driver against the cabdriver, since the obligation of the cabdriver and the cab owner to the other defendant are predicated upon the same negligent conduct. The same obligation to contribute is on both driver and owner. Since there is only one act of negligence there should be only one obligation imposed upon the two parties liable for that act. It does not seem reasonable that the cabdriver, or a subcontractor, should ultimately be required to pay more of the verdict because the law has decreed that another must answer for his torts when he cannot.

This system of allocating the proportionate shares of the verdict among the defendants eliminates one of the major objections raised by the Gas Company to the trial court's decision. It argues that had Edina been insolvent, Barbarossa's right to indemnity from the Gas Company would mean that it would have to satisfy the entire amount of the judgment

while Barbarossa paid nothing. Under the approach outlined above the Gas Company's rights against Barbarossa would be identical to its rights against Edina; and if Edina could not pay its share of the verdict, Barbarossa would have to. Further, it does not appear to be unfair to Barbarossa to require it to assume the obligations of Edina as to other defendants as well as Edina's obligation to the plaintiffs. Barbarossa is in a position to protect itself by hiring contractors who are financially responsible, while the Gas Company, like the plaintiffs, has no control over which subcontractor is awarded the job.

Therefore we hold that where there are multiple defendants and one or more of them is liable to the plaintiff solely on the basis of negligence imputed to it by virtue of its relationship with one of the other defendants, the one guilty of the negligent conduct and the one to whom the negligence is imputed are to be treated as one party for purposes of determining the fair share of the verdict each defendant must pay.

■ The second issue raised by the Gas Company is whether the $150,000 awarded the child, Steven Larsen, and the $125,000 awarded his father are grossly excessive. It is contended that these verdicts are the result of the passion and prejudice of the jury caused by the strong emotional effect on it of the severely disfiguring and painful burns sustained by Sandra Larsen, and that neither verdict is supported by the evidence.

Most of the facts relative to the damages sustained by Steven and Erling have been stated. It can be added that none of the witnesses presented by plaintiffs on the issue of damages were cross-examined by any of the defendants. The medical testimony indicated that the reason no plastic surgery was contemplated on Steven's face was that, in the surgeon's opinion, the skin grafts would not materially improve the condition which existed at the time of trial. The doctor indicated that as Steven grows older there will be a decrease in the three-dimensional nature of the facial scars. It should also be noted that in its memorandum accompanying denial of the new-trial motion, the trial court stated:

"The Court is fully cognizant of the admonition by our Supreme Court that the trial court should carefully scrutinize verdicts wherein large

amounts are returned in cases of personal injury. However, it would be difficult, if not impossible, for anyone who did not have the opportunity to view in person both Mrs. Larsen and Steven to fully appreciate the severity of the injuries and disfigurement sustained by each of them. The Court, in its experience both as an individual and as a judge, has never seen a person more seriously mutilated, disfigured, and injured from burns than Mrs. Larsen. Steven also sustained most severe burns. In each case the burns resulted in scarring. * * * These scars * * * undoubtedly will have a serious effect upon Steven's earning capacity when he reaches the age of gainful employment.

"* * * In addition to these actual expenses, Mr. Larsen's married life, his social life and his life generally have been gravely altered. All of married life's intimacies that come within the definition of services and companionship have been irreparably damaged, and in the opinion of the Court that part of the jury verdict allocable to loss of services and companionship by Mr. Larsen is nothing more than barely adequate. It is for these reasons that the Court, after careful study, feels that this is not a case wherein the jury has exceeded its proper bounds in awarding damages."

The Gas Company does not contend that plaintiffs' counsel was guilty of any impropriety in the course of the trial or closing argument which would tend to inflame the jury; nor does it argue that there was improper reliance on mathematical formulae or any attempt to itemize damages or measure pain and suffering on a day-to-day basis. Therefore, this is not a situation like those in McCrank v. G. N. Ry. Co. 260 Minn. 329, 109 N. W. (2d) 582; Hallada v. G. N. Ry. Co. 244 Minn. 81, 69 N. W. (2d) 673; and Ahlstrom v. Minneapolis, St. P. & S. S. M. Ry. Co. 244 Minn. 1, 68 N. W. (2d) 873, where verdicts were reduced by this court because mathematical formulae had been misapplied by the jury. This is not to say, however, that the basic principle established in those cases and reaffirmed most recently in Sorenson v. Cargill, Inc. 281 Minn. 480, 163 N. W. (2d) 59, that an award must be considered as a whole to determine its effect on the injured party and that such verdict must not make him more than whole, does not apply. What it does mean is that

this case does not lend itself to the particularized consideration of the elements of the verdict as did those cases.

The Gas Company directs our attention to numerous cases in which the recovery for loss of consortium was considerably smaller than that given here and in which persons who suffered injuries claimed to be at least as severe as Steven's did not receive awards comparable to his recovery.[4] While such cases serve to emphasize the obvious fact that the awards in this case are rather substantial, they are of minimal value in determining whether these verdicts are grossly excessive, as the Gas Company alleges. It is a well-established rule in this state that whether a verdict is excessive depends upon the facts of the particular case. Bush v. Havir, 253 Minn. 318, 91 N. W. (2d) 784. The present case differs from those cited in that none of the consortium awards involved substantial alteration of the wife's appearance or change in her personality as occurred here. Further, there is no indication of how the severity of Steven's scarring compares with that of the plaintiffs in the other cases, particularly with regard to the scars that will be observable most or all of the time.

We have indicated in the past a considerable reluctance to alter a jury's determination of a plaintiff's damages where that determination has been affirmed by the trial court. In Krueger v. Knutson, 261 Minn. 144, 154, 111 N. W. (2d) 526, 533, we said:

"* * * In fact, we have said that the matter of granting a new trial for excessive or inadequate damages rests almost wholly in the discretion of the trial court."

Similarly, in Mester v. Fritze, 265 Minn. 242, 246, 121 N. W. (2d) 335, 338, we said that in order for this court to set aside a verdict which has been sustained by the trial court, "it must appear that such verdict

---

[4] McCormack v. Hankscraft Co. Inc. 278 Minn. 322, 154 N. W. (2d) 488; Johnson v. Clement F. Sculley Const. Co. 255 Minn. 41, 95 N. W. (2d) 409; Bush v. Havir, 253 Minn. 318, 91 N. W. (2d) 784; Rudd v. Village of Bovey, 252 Minn. 151, 89 N. W. (2d) 689; Knox v. City of Granite Falls, 245 Minn. 11, 72 N. W. (2d) 67, 53 A. L. R. (2d) 1091; Ostrowski v. Mockridge, 242 Minn. 265, 65 N. W. (2d) 185, 47 A. L. R. (2d) 733.

was so exorbitant and excessive as to indicate a complete lack of fairness and justice on the part of the jury."

In the present case the verdicts were based primarily on intangibles—the effect of Sandra's disfiguring injuries on the marriage relationship and the pain and emotional distress Steven has had and will endure. The testimony offered by plaintiffs on these points and on possible impairment of Steven's employment opportunities was uncontroverted. None of the plaintiffs' witnesses was even cross-examined. The verdicts represent the jury's attempt to convert these intangibles into monetary equivalents, and we hold that in so doing it did not exceed the bounds of justice as to either Erling or Steven.

That portion of the order of the trial court dealing with the rights of the defendants inter se must be and hereby is modified to allow the Gas Company contribution from both Edina and Barbarossa up to half of the total verdict, with a right in Barbarossa to indemnity from Edina Since Edina has already paid this amount, our decision relieves Barbarossa of any further liability. In all other respects, the order of the trial court is affirmed.

Affirmed as modified.