## EDWIN F. RUSSELL v. ARTHUR H. STROHOCHEIN AND ANOTHER.

233 N. W. 2d 289.

August 22, 1975—No. 45022.

*Quinlivan, Williams, Johnson & Quinlivan* and *John Quinlivan,* for appellant Strohochein.

*Ellingson & Serstock* and *Kendall Ellingson,* for appellant Studer.

*Schway & Gotlieb* and *Jerome A. Gotlieb,* for respondent.

Heard before Otis, Peterson, and Kelly, JJ., and considered and decided by the court en banc.

PER CURIAM.

Appeal from an order denying a motion for new trial. Plaintiff, Edwin Russell, brought action against defendants, Arthur· H. Strohochein and David J. Studer, for $10,000, to recover for an injury to the middle finger of his right hand sustained when two automobiles driven by defendants collided. The case was tried to a jury which assessed negligence of 60 percent against Studer and 40 percent against Strohochein and found that plaintiff had sustained general damages of $6,750 as well as $37.50 for medical expenses. The trial judge ordered that judgment be entered accordingly and both defendants moved for new trial on the grounds, among others, of (1) excessive damages and (2) improper argument of counsel. That motion was denied and this appeal followed. We affirm.

On October 9, 1971, two automobiles driven by defendants collided on Highway No. 12 at an intersection in Howard Lake, Minnesota.

Plaintiff Russell, a 39-year-old truckdriver, was stopped at a stop sign in his gasoline transport truck at the time the collision occurred. The impact of the collision caused the Strohochein car to glance off the Studer car and strike the front end of Russell's stopped transport. Russell had his hands on the steering wheel and as he waited at the stop sign, he witnessed the collision that occurred immediately in front of his transport. The jolt which resulted when the Strohochein vehicle spun off and struck the transport dislodged Russell from his position in the cab, causing his hands to fly up from the steering wheel and strike the windshield or dashboard.

Following impact, Russell knew he had hurt his hand, but "thought it was a strain or something." He testified that he "just kind of shook it off," and that he "didn't think that it was any serious injury." Russell did not mention the injury to anyone at the collision scene. Within a short time after the collision, he noticed that the middle finger of his right hand was "already getting pretty stiff" and "it was swollen and it hurt quite a bit."

The incident occurred on a Saturday and Russell returned to work as usual on the following Monday and worked the full week. During that week, the finger "was swollen and it bothered [him] quite a bit." On October 18, he visited a doctor who took X-rays and advised him to soak the hand. Russell testified that the finger continued to bother him—

"* * * through my work, steering my truck, shifting, hooking up the hoses. Any time I have to use any kind of grip on it, it bothers me."

The finger has not improved at all, according to Russell. He testified that it is regularly sore and numb after a working day, that he is often jolted by severe pain in the finger joint, that he has dropped his membership in a bowling team and is unable to bowl any longer, that cold weather causes increased stiffness and discomfort in the joint, and that movement of the hand in swimming is painful.

Medical testimony by an orthopedist whom Russell consulted in April 1972 described the injury as a hyperextension of the finger in a backward direction, causing a rupture of the volar plate at the knuckle joint and a rupture of a ligament. The condition of the finger is permanent and is medically defined as a chronic instability of the joint. The orthopedist estimated permanent residual disability of the joint at 5 percent.

The issue is whether the jury's determination of $6,750 general damages was excessive and was awarded by a jury aroused to passion and

prejudice as a result of misconduct in the final argument of plaintiff's counsel.

It is well established that the question of excessive damages is largely within the discretion of the trial judge, whose denial of a new trial on that ground will not be disturbed on appeal unless there has been a clear abuse of discretion. The general rule on appellate review has been expressed in Kennedy v. Caudell, 277 Minn. 35, 39, 151 N. W. 2d 407, 410 (1967):

"* * * [E]xcessiveness of a verdict is a matter basically for the trial court and * * * we interfere only in those rare situations where there is a plain injustice or a monstrous or shocking result."

In McCormick v. Malecha, 266 Minn. 33, 43, 122 N. W. 2d 446, 453 (1963), this court elaborated on its task in such cases:

"* * * [A]ppellate courts are slow to interfere with the determination of the trial court unless it clearly appears that there has been an abuse of discretion. The criteria expressed in some decisions—that the verdict should not be revised unless it shocks the court's sense of justice and the impropriety of allowing the verdict to stand is so manifest as to show a clear abuse of discretion, or unless it is fairly evident that the trial judge failed to keep the jury within the bounds of reason and common sense—do not provide general standards which are easy to apply. * * * In applying the generally expressed standards for appellate review of damages, we must attempt to realistically appraise the verdict in the light of the evidence in the particular case to determine if the verdict is out of line and whether the trial court manifestly abused its discretion in permitting it to stand."

There is nothing here to indicate an abuse of discretion by the trial judge. Nor can it be said that the verdict is so excessive as to shock the court's sense of justice or that there has been a monstrous or shocking result, although the award was a generous one. The trial court's memorandum in support of the order denying a new trial is persuasive and it articulates our reasons for affirmance. The trial court there stated:

"In moving for a new trial, the attorneys for the defendants assert that the jury was prompted by passion and prejudice in giving the plaintiff a generous verdict, and that passion and prejudice was caused by improper argument of plaintiff's counsel. The Court indicated that the comments made by plaintiff's counsel were provoked by the argument of the defendant [Strohochein's] counsel. Since the arguments of counsel for plaintiff and [Strohochein] may have aroused the jury,

it appears to the Court this was not true since the jury found [Strohochein] only 40% negligent and the defendant Studer 60% negligent even though counsel for Studer made a very mild argument.

"Though the Court feels that the verdict was generous, all of the testimony for the plaintiff is unrefuted. The medical testimony indicates a permanent partial disability of the right hand of a right handed man who does physical labor. The plaintiff testified that he has had pain since the accident and that he has had to forego his favorite hobby and that he also experiences pain in his everyday work. It is the function of the jury to evaluate the damages and they have done so. The undersigned does not believe the verdict was given through passion and prejudice and in the exercise of the usual and ordinary discretion of the trial court the motion for mistrial and the later motion for new trial were denied."

It should be additionally noted that defendants failed to object to the closing argument before the jury retired. No request to the trial court for instructions to correct any misleading factual or legal characterizations was made, and the court's instructions were accepted without objection. The effect of defendants' failure to object was to raise the standard of misconduct required for reversal, as this court has said that in such circumstances the misconduct must have been so reprehensible as to require the action of the trial court on its own motion. Janicke v. Hilltop Farm Feed Co. 235 Minn. 135, 50 N. W. 2d 84 (1951). Defendants' argument that such an objection would have been meaningless because the harm was already done is without merit.

Affirmed.