**SPRINGFIELD FARMERS ELEVATOR CO., Appellant,**

v.

**HOGENSON CONSTRUCTION COMPANY, Respondent.**

**No. 47937.**

Supreme Court of Minnesota.

June 30, 1978.

---

Grossman, Karlins, Siegel & Brill, Minneapolis, for appellant.

Gislason, Dosland, Malecki, Gislason & Halverson, New Ulm, for respondent.

Heard by ROGOSHESKE, WAHL and GODFREY, JJ., and considered and decided by the court en banc.

ROGOSHESKE, Justice.

This appeal arises out of the jury verdict of no liability in the action of plaintiff, Springfield Farmers Elevator Co., to recover damages for the destruction of its "wood cribbed" grain elevator by fire allegedly caused by negligence of employees of defendant, Hogenson Construction Company, in cutting and welding operations conducted in the cupola of the elevator to repair a manlift platform. Plaintiff, in this appeal from the trial court's denial of its post-trial motion for a new trial, claims (1) lack of evidentiary support for the verdict, (2) prejudicial misconduct in defense counsel's closing argument, and (3) error in the trial court's submitting the special question to the jury of whether the fire resulted "from the negligent act or omission of any person." We find adequate evidentiary support for the jury's special findings, no prejudicial misconduct of counsel, and no prejudicial error in submitting the question as to whether the fire was of undetermined origin, and affirm.

On Sunday, December 17, 1972, plaintiff's grain elevator in Springfield, Minnesota, was destroyed by fire. Damages of $750,-000 have been stipulated. The elevator was constructed by defendant in 1971. Inside of the elevator extending from the ground straight up to the highest part of the elevator, called the headhouse or cupola, was a shaft in which was operated an electric manlift and freight elevator. Plaintiff had reported trouble with the manlift shortly after the elevator was built. Following unsuccessful attempts to repair the manlift, defendant sent two of its employees to install a new motor and drive assembly at the top of the manlift platform in the cupola of the elevator. The two employees worked on installing the new motor on Thursday, December 14, and Saturday, December 16, 1972, the day before the fire. On both days, the men did cutting and welding work at the top of the manlift platform, using an electric welder and an acetylene torch in order to mount the motor on a metal plate. The last welding and cutting was finished before noon on Saturday, December 16.

The employees left the elevator between 3 and 4 p. m. on Saturday after filling the motor with oil and completing cleanup work. On Sunday, December 17, at 8 a. m., a fire was discovered in the elevator. There were no eyewitnesses to the cause of its ignition.

Plaintiff alleged that defendant's employees were negligent in failing to follow adequate safety precautions in their welding and cutting operations and that the fire was caused by that negligence. It claimed that hot molten slag and spatter which was thrown from the welding and cutting had lodged in the wooden shiplap floor in the cupola and, after smoldering for some 19 hours, had ignited in flames. Two expert witnesses called by plaintiff testified that in their opinion this was the cause of the fire.

Defendant's theory was that the fire started in the east part of the elevator, rather than in the cupola at the elevator's west end, from some unknown cause other than the welding and cutting done by defendant's employees. Two expert witnesses called by defendant so testified. They also gave opinions that the fire did not have its origin in the cupola because, despite the strong updraft, the cupola was not first consumed by fire before it spread horizontally below it, and that the fire more likely was caused by an aeration fan at the lower east part of the elevator or spontaneous combustion in the grain as the elevator had been filled to capacity by Saturday, December 16. Defendant's experts also expressed the opinion that molten slag or spatter would not smolder as long as 19 hours before igniting in flames in a dusty, drafty grain elevator, and that in their opinion defendant's employees followed standard and approved safe cutting practices.

In closing argument to the jury, defense counsel stated that the state fire marshal had been at the scene of the fire, and plaintiff, who had the burden of proof, had failed to call him as a witness. He also stated that the Springfield fire chief said he had been unable to determine a cause of the fire. No objection was made to these remarks, but in his closing argument plaintiff's counsel stated that the state fire marshal had come to the scene 3 days after the fire but there was no evidence placing him at the scene of the fire, or if there were, defendant should have called him as a witness.

The case was submitted to the jury on a special verdict asking the jury to determine (1) whether "the fire damage result[ed] from the negligent act or omission of any person"; (2) if No. 1 was answered "yes," whether any negligent act or omission of plaintiff's agent or employees directly caused or contributed to cause the fire damage; (3) if No. 1 was answered "yes," whether the negligent act or omission of an employee or agent of defendant directly caused or contributed to cause the fire damage; and (4) the percentage of the total causal negligence attributable to plaintiff and to defendant. The jury answered each of the first three questions "no" and entered zeros as to the percentage of negligence in No. 4. Following an order entering judgment dismissing plaintiff's complaint, plaintiff moved for a new trial, urging that the verdict was contrary to the weight of the evidence, claiming misconduct of defense counsel during final argument, and alleging error in submitting special verdict No. 1. The motion was denied and plaintiff appeals.

■ 1. Upon the record presented, we are persuaded that there is adequate evidentiary support for the verdict. There were no eyewitnesses to the ignition of the fire. The dispute required a resolution of conflicting opinion testimony founded upon photographic and eyewitness descriptions of the appearance of the fire from the time it was first discovered until noon of the day of the fire. Those descriptions plus the factual record and the conflict in the testimony permitted the jury justifiably to decide either way, and we are not at liberty to interfere.

■ 2. With respect to the claimed misconduct of defense counsel during closing argument, we find no prejudicial error which would warrant a new trial. As we

read the record, it does not support plaintiff's allegation that defense counsel misstated the testimony of the Springfield fire chief. The comments by defense counsel during closing argument drawing an adverse inference from plaintiff's failure to call the state fire marshal as a witness may approach the improper.[1] We are persuaded, however, that the comments were not prejudicial to plaintiff. The record shows that, following defendant's closing argument, plaintiff's counsel in his closing argument to the jury rebutted any adverse inference which the comments by defense counsel may have created. Plaintiff's counsel stated his recollection that the fire marshal had not been at the scene until 3 days after the fire, thus questioning the fire marshal's value as a witness; he also asked the jury why defendant had not called the fire marshal, raising a competing adverse inference against defendant. The effect of defense counsel's comments was thus neutralized, and the jury was fully informed and enabled independently to determine what, if any, inference to draw from the failure of both parties to call the state fire marshal. Under the circumstances, we can find no prejudicial error in the conduct of defense counsel. Moreover, plaintiff, having failed to object or request a corrective instruction before the trial court, is in no position to obtain a new trial upon this allegation of error; plaintiff's argument that objection would have been ineffectual to erase damage already done by the comments is without merit and forms no excuse for failure to seek corrective relief from the trial court.

*Russell v. Strohocheim,* 305 Minn. 532, 233 N.W.2d 289 (1975).

3. Plaintiff's argument that submission to the jury of special verdict No. 1 asking whether "the fire damage result[ed] from the negligent act or omission of any person" was improper is not without merit. Rule 49.01, Rules of Civil Procedure, permits submission of a special verdict form requiring "a special written finding upon each issue of fact" in the case. In submitting the case to the jury as it did, the trial court necessarily had determined that upon the evidence presented reasonable minds could find negligence by either plaintiff or defendant to have been a contributing cause of the fire damage. The issues before the jury which were determinative of defendant's liability were thus completely stated in special verdicts No. 2 through No. 4, which asked whether any negligent act or omission by plaintiff or by defendant caused or contributed to cause the fire damage and the percentage of causal negligence attributable to each of them. Special verdict No. 1 was totally unnecessary to determine the case. Submission of that question served only to overemphasize defendant's case, which was based on the theory that the cause of the fire was undetermined.

Special verdict No. 1 was potentially similar in effect to the "*unavoidable accident*" question which we disapproved in *Holten v. Parker,* 302 Minn. 167, 224 N.W.2d 139 (1974). In that case involving an automobile collision, the first special verdict read, "Was the collision of May 24, 1971, an una-

---

1. We have held that comments by a plaintiff's counsel drawing an adverse inference from the defendant's failure to call a particular witness are improper where the witness was equally available to both parties and equally likely to favor either party. *Malik v. Johnson,* 300 Minn. 252, 219 N.W.2d 631 (1974). See, also, *Fischer v. Mart,* 308 Minn. 218, 241 N.W.2d 320 (1976) (failure to introduce deposition testimony of a decedent). Upon the record presented, there is nothing to indicate that the state fire marshal, if called, could have been expected to favor one party more than the other or that he was any less available to either party. The comments of defense counsel raising an adverse inference from plaintiff's failure to call an apparently neutral witness in this case, how-

ever, were directed against the party who had the burden of persuasion on the issues to which the witness' knowledge would have related, as was not the case in either Malik or Fischer. In this situation, we find persuasive the reasoning expressed in McCormick, Evidence (2 ed.) § 272, p. 648: "* * * [T]hough the judge thinks the [uncalled potential] witness would be as likely to favor one party as the other, he should permit either party to argue the inference against the adversary. At least, it would appear in this supposed case of 'equal favor,' if the witness's knowledge is directed toward a particular issue, then the argument should be available against the party who has the burden of persuasion on that issue."

voidable accident." The jury was instructed to answer questions which followed as to whether the accident was caused by defendant's negligence only if it answered the first question "no." The jury answered the first question "yes" and consequently did not determine whether defendant was negligent. We disapproved the submission of the unavoidable-accident question to the jury and ordered a new trial. Recognizing the weakness of the unavoidable-accident question, we said (302 Minn. 173, 224 N.W.2d 143):

" '* * * [S]uch an instruction merely restates a phase of the law of negligence, serves no useful purpose, in effect overemphasizes the defendant's case, is apt to confuse and mislead, and should not be given.'

"* * * The error in this case occurred in isolating one ultimate fact of defendant's negligence, submitting this as a special question to the jury, and using their answer to preclude the overall evaluation of his negligence. * * *."

For similar reasons, we cannot approve the submission to the jury of special verdict No. 1 in this case.

Here, however, the question does not appear to have confused or misled the jury or precluded its overall evaluation of defendant's and plaintiff's negligence. Unlike Holten, the jury here answered all of the special verdict questions, although not required to by the verdict form. Because of the jury's independent consideration of Nos. 2, 3, and 4, and its specific determination after hearing all of the evidence that no negligent act of defendant caused or contributed to cause the fire, we do not find that plaintiff was prejudiced by the submission of special verdict No. 1 to warrant a new trial.

Affirmed.