James P. CAFFERTY, et al.,
Respondents,

v.

Nancia L. MONSON, et al., Appellants.

No. C1–84–1182.

Court of Appeals of Minnesota.

Jan. 8, 1985.

David O'Connor, Woodbury, for respondents.

Craig H. Anderson, Susan D. Thurmer, Cousineau, McGuire, Shaughnessy & Anderson, Chtd., Minneapolis, William Kolbinger, Big Lake, for appellants.

Heard, considered and decided by LESLIE, P.J., and WOZNIAK and LANSING, JJ.

## OPINION

LESLIE, Judge.

The defendant appeals from the denial of her motion for a new trial. The trial court found that the verdict was not excessive and was supported by the evidence. We affirm.

## FACTS

This action arose out of an automobile accident which occurred on July 11, 1981. On that day respondent James Cafferty had been driving his truck in Big Lake, Minnesota and had stopped momentarily in response to slowing traffic ahead of him. Appellant Nancia Monson, who was approximately one car length behind Cafferty, was unable to stop her car, and skidded into the back of the respondent's truck.

The respondent brought this action against the appellant, claiming to have suffered ongoing back and neck pain, memory loss, headaches and dizziness as a result of the accident. His wife joined in his action, claiming loss of consortium. By special verdict a jury found the appellant 100% at fault, awarded the respondent $160,000.00, and awarded his wife $10,000.00.

The appellant moved for a new trial, claiming that the verdict was excessive due to passion and prejudice, and that the verdict was not supported by the evidence. The appellant specifically objected to the respondent's attorney's use of a per diem formula in his closing argument to illustrate a method of determining damages for pain and suffering. She also objected to the court's decision to allow a chiropractor to demonstrate the respondent's injuries by utilizing a model of a human skull. The trial court denied the motion and this appeal followed.

## ISSUES

1. Whether the trial court erroneously allowed a chiropractor to testify about nerves above the human neck, using a model of the human skull to support that testimony.

2. Whether the respondent's attorney in his closing argument improperly utilized a per diem formula to illustrate one method of determining damages for pain and suffering.

3. Whether the trial court improperly denied the appellant's motion for a new trial where that motion was based on claims that the verdict was excessive, based on passion and prejudice, and not justified by the evidence.

## ANALYSIS

### I.

A chiropractor's practice is governed by statute. Minn.Stat. § 148.01 subd. 1 (Supp.

1983) defines "chiropractic" as "the science of adjusting any abnormal articulations of the human body, especially those of the spinal column, for the purpose of giving freedom of action to impinged nerves that may cause pain or deranged function." The statute specifically limits the procedures which a chiropractor may utilize, and provides that "[n]o device shall be used above the neck of the patient." Minn.Stat. § 148.01 subd. 3. Because of this language, the appellant argues that a chiropractor is unqualified to testify about nerves which are above the neck, and claims it was erroneous to allow such testimony especially in this instance since the chiropractor used a model of a human skull to support his testimony.

The record reveals that upon objection by the appellant to the skull model, the trial court specifically limited its use. The court allowed the model only to demonstrate the extension of the spine, and limited the chiropractor's testimony to facts particularly within his expertise as a chiropractor. Testimony concerning nerves above the neck was thereupon offered by the chiropractor to explain the respondent's headaches, and the skull model was used in conjunction with a model of the spine to demonstrate whiplash.

The court also allowed the chiropractor to express his opinions concerning causation between the accident and the respondent's injuries and the permanency of those injuries. The appellants objected to the allowance of that testimony due to the fact that the chiropractor had not reviewed any of the respondent's prior medical records before he expressed those opinions.

■ Whether a trial court should allow expert testimony is governed by Rule 702 of the Minnesota Rules of Evidence. That rule states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The comments to that rule indicate that whether a witness is sufficiently qualified as an expert and whether an expert's opinion may assist the trier of fact are decisions which lie within the discretion of the trial court. This discretion is broad, and should not be reversed, absent clear abuse. *Dunshee v. Douglas*, 255 N.W.2d 42, 47 (Minn.1977).

■ In *Line v. Nourie*, 298 Minn. 269, 215 N.W.2d 52 (1974), *appeal after remand*, 304 Minn. 566, 229 N.W.2d 520 (1975) the Minnesota Supreme Court held that "a chiropractor can render opinions based on reasonable chiropractic certainty as to the probable effects, permanence, and future medical requirements of any injury where proper foundation for such opinion has been laid." *Id.* at 276, 215 N.W.2d at 56. In the present instance foundation was introduced establishing the chiropractor's credentials, and demonstrating that he had treated the respondent over a period of several years. He had "performed standard chiropractic, neurological and orthopedic examination procedure[s]" which were described, and his opinions were formed based upon his testing and treatment of the respondent's symptoms. The trial court's decision to allow the chiropractor's testimony was therefore not an abuse of discretion.

## II.

■ The appellant has also challenged the respondent's closing argument to the jury, claiming that undue passion and prejudice resulted from the utilization of a per diem formula to argue damages for pain and suffering. Before discussing the law concerning use of a per diem formula, it should be noted that an objection to the respondent's closing argument was never made at the time of trial. As indicated in *Hake v. Soo Line Ry.*, 258 N.W.2d 576 (Minn.1977), where an attorney allegedly inspired passion and prejudice by incorporating irrelevant references in his closing argument:

An objection to improper remarks, a request for curative instruction, and a refusal by the trial court to take corrective action are generally prerequisites to the obtaining of a new trial on appeal except where the misconduct is so flagrant as to require the court to act on its own motion, or is so extreme that a corrective instruction would not alleviate the prejudice.

*Hake*, 258 N.W.2d at 582 (citations omitted). *See also Russell v. Strohochein*, 305 Minn. 532, 233 N.W.2d 289 (1975). The issue in this instance, is therefore whether the respondent's use of a per diem formula to illustrate damages for pain and suffering was misconduct requiring the trial court to act upon its own motion. Our supreme court's decisions indicate that the use of per diem formulae in closing arguments for purely illustrative purposes is perfectly proper.

In *Christy v. Saliterman*, 288 Minn. 144, 179 N.W.2d 288 (1970), the issue was raised whether an attorney had improperly suggested damages on a per diem basis. The *Christy* court noted:

> Courts have expressed varying views as to the propriety of this approach as an aid to estimating the award for pain and suffering. This approach is not found objectionable where it is coupled with an instruction that the argument is not to be substituted for evidence and that the jury should follow the court's general instructions regarding that element of damage. * * * *We have held that "the use of the mathematical formula is proper for purely illustrative purposes." Flaherty v. Minneapolis & St. L. Ry. Co.*, 251 Minn. 345, 348, 87 N.W.2d 633, 635; *Boutang v. Twin City Motor Bus Co.*, 248 Minn. 240, 80 N.W.2d 30.

*Id.* at 169–170, 179 N.W.2d at 304 (emphasis supplied). In *McCrank v. Great Northern Ry.*, 260 Minn. 329, 109 N.W.2d 582 (1961) the court indicated that although a mathematical formula is allowable, an award based upon that formula must also be reasonable in light of its overall effect. *Id.* at 333, 109 N.W.2d at 585.

In the present instance, a review of the transcript reveals that counsel for the respondents specifically noted the limitations upon use of his formula, and supplied the per diem figures only to illustrate how the jury might arrive at a reasonable figure for pain and suffering. This use of a formula for purely illustrative purposes is allowed by *Christy v. Saliterman* and the cases cited therein. Therefore, the remaining issue is whether the jury verdict of $160,000.00 in favor of respondent James Cafferty was reasonable in light of its actual effect and the evidence submitted. We find that the verdict was reasonable, based upon the evidence discussed below.

### III.

Review of a trial court's decision to deny a motion for a new trial is limited. Where a motion is based upon the claim that a jury awarded excessive damages based upon passion or prejudice, an appellate court must defer to the trial court's broad discretion and should reverse its denial of the motion for new trial only where there has been an abuse of that discretion. *Bigham v. J.C. Penney Co.*, 268 N.W.2d 892, 898 (Minn.1978). The same standard of review is applicable where the motion for a new trial is based upon a claim that the verdict is unsupported by the evidence. *Conover v. Northern States Power Co.*, 313 N.W.2d 397, 408 (Minn.1981) (appellate court should defer to presiding trial court, which is given the "broadest possible discretionary power").

In the present case there is ample evidence in the record to support the jury verdict of $160,000.00 in favor of the respondent. The respondent is 63 years old, has an 8th grade education, and has been a dairy farmer all his life. Up until the accident he had worked his farm 365 days a year, generally by himself, but with some help from his sons from time to time. For 14½ years he also worked for a factory running an expanded metal machine from midnight until 8:00 a.m. At times he

worked 24 hours in a day, but averaged about 12 hours per day. In addition, he helped his son with farm work and worked for approximately 20 other farmers at harvest time.

On the day of the accident his head went through the back window of his truck. He was dizzy and had headaches beginning the first night. He was stiff and sore the next day and has had trouble sleeping from then on. He began to experience pain in the back of his neck and head within the first two weeks following the accident. He gets dizzy spells quite often when he climbs, gets up or looks up, has numbness in his hands and legs at times, and has fallen four times. Since the accident, he has been unable to lift over 30 pounds, he is tired most of the time, and spends most of his time sitting inside. His sons help with the farm and he has had to hire someone to help with the plowing. He has been advised not to drive, and stays away from most farm machinery due to his dizzy spells. Shortly after the accident the respondent visited his chiropractor, complaining of pains in his neck, headaches, pain in his dorsal spine, some lower back pain and numbness in the hands and fingers. His chiropractor performed "standard chiropractic, neurological and orthopedic procedure[s]" and diagnosed the respondent's condition as nerve root irritation and soft tissue damage caused by spinal injuries in the neck (cervical spine) and upper back (dorsal spine). Those injuries appeared to have been caused by whiplash. He found evidence of arthritis in the lower cervical spine, which he determined had been asymptomatic but had become symptomatic as a result of aggravation by injury. He testified that the condition was permanent and, based on his expertise and upon the history which the respondent had given him, determined that there was a causal relationship between the respondent's condition and the accident.

A doctor of psychiatry and neurology also testified that the respondent's injuries were caused by the accident. He diagnosed the respondent's condition as cervical disc syndrome and post-traumatic syndrome, and testified that although the discs had probably been previously asymptomatic, as a result of the accident they had become symptomatic and had narrowed.

Although the appellants did introduce testimony by experts which if believed would tend to refute the testimony of the respondent, the jury apparently chose to believe the respondent and his experts' evidence. Where questions are raised concerning the sufficiency of the evidence to support a jury verdict, the evidence must be viewed upon appeal in a light most favorable to the verdict, *Gordon v. Hoffman*, 303 N.W.2d 250, 252 (Minn.1981), and a verdict should not be disturbed if there is evidence which reasonably tends to support it. *Id.*

## DECISION

The trial court did not abuse its discretion when it denied the appellants' motion for a new trial. Affirmed.