JACK KEEFER AND ANOTHER v. AL JOHNSON CONSTRUCTION COMPANY AND ANOTHER. WISCOMBE SOUTHERN PAINTING COMPANY, THIRD-PARTY DEFENDANT.

193 N. W. 2d 305.

December 30, 1971—Nos. 42550, 42551.

94

*Robb, Van Eps & Gilmore* and *Don James Chantry,* for appellant defendants.

*Mahoney, Dougherty, Angell & Mahoney* and *John F. Angell,* for appellant third-party defendant.

*Robins, Meshbesher, Singer & Spence* and *Russell M. Spence,* for respondents.

MURPHY, JUSTICE.

Plaintiff-employee, injured in the course of his employment and a recipient of workmen's compensation benefits, brought an action for damages against the third-party general contractor. A similar action was brought by the compensation carrier against the contractor. In both actions the contractor instituted a third-party action for indemnity against the employer-subcontractor. The contractor was awarded judgment for indemnity against the subcontractor for damages established by special verdict. The appellant subcontractor asserts error in application of law as to common law and statutory liabilities including comparative negligence.

From the record it appears that plaintiff, Jack Keefer, was employed as a painter by Wiscombe Southern Painting Company, whose workmen's compensation insurer is Pacific Employers Insurance Company. Al Johnson Construction Co. and Peter Kiewit Sons' Co., hereafter called the contractor, entered into a contract with the Corps of Engineers, United States Army, for the construction of the upper lock of the St. Anthony Falls Project in the Mississippi River. The contractor entered into a written agreement with Wiscombe, hereafter the subcontractor, pursuant to which the subcontractor was to do "all painting required by the contract plan and specifications" relating to the project. The accident giving rise to these actions occurred on June 12, 1962. Plaintiff was employed by the subcontractor in spray-painting the inside of a mooring tank. These tanks are cylindrical, each approximately 12 to 14 feet long and 3 to 4 feet in diameter, with a 15- to 18-inch opening at one end sufficient

for a man to enter. The cylinder is divided into three compartments by "baffle plates" or internal bracing. There is also a metal ladder inside running the length of the cylinder. These cylinders were ultimately to be placed vertically in the water in the lock structure and pressure hoses were to be attached to the open ends, allowing them to float up and down in the lock wake "to provide easier mooring for the tows."

Plaintiff was required to spray-paint the inside of the cylinders with a vinyl-based paint mixture. The paint, furnished by the Corps of Engineers, contained an additive, described as "T-10," which gave it a highly volatile character. The subcontractor's foreman had provided plaintiff with spray-painting gear, an "old army gas mask," and an extension cord with a "floodlight type" bulb. In the process of painting a cylinder, while wearing his gas mask, he would place the electric light on the floor and hold the spray-painting equipment with both hands. The light bulb was not enclosed in a protective wire covering. The spray painting would create a heavy vapor "fog" which was confined within the cylinder. There was no ventilation. Plaintiff completed painting the inside of one cylinder without incident. While plaintiff was working in the second cylinder, the trapped vapors ignited, presumably from a break or defect in the unprotected bulb, causing severe burns to plaintiff's body. It appears that the resulting injuries are permanent, and plastic surgery was required. Plaintiff is now able to do light painting work.

The employer's insurance company, Pacific Employers Insurance Company, paid workmen's compensation benefits to plaintiff and paid his medical expenses. It also brought an action against the third-party general contractor, alleging negligence on the contractor's part. Minn. St. 176.061, subd. 5. The basis for the alleged liability of the general contractor is that it breached a nondelegable duty assumed by its contract with the Corps of Engineers to protect against damages resulting from negligence in carrying out the contract. After being sued, the general contractor, as third-party plaintiff, joined the subcon-

tractor as third-party defendant, claiming the right to indemnification for any judgment resulting from plaintiffs' actions against it on the ground that the subcontractor breached the terms of the subcontract by failing to observe safety rules. It is agreed that there was incorporated into the contractor's agreement with the Corps of Engineers a safety manual requiring the use of shielded light bulbs with drop or extension cords and requiring the use of adequate ventilation in connection with spray-painting in confined areas. This same obligation was imposed upon the subcontractor by its agreement with the contractor.

The two actions were tried together, and the fact issues, as conceived by the trial court, were submitted to the jury by special verdict. From the record it would appear that the theories of trial were not clearly defined, and the evidence, as submitted and received, would give the impression that the third-party actions were tried as for contribution, with both the contractor and the subcontractor in the posture of joint tortfeasors. In submitting the issues to the jury, the trial court instructed on comparative negligence, and in answer to questions as to percentage of fault, the jury found that the general contractor's proportion was 28 percent; the employer-subcontractor's, 55 percent; and the plaintiff-employee's, 17 percent. The jury found plaintiff-employee's damages to be in the sum of $52,000 plus $2,954.39 medical costs.

Pursuant to the verdict, the court initially ordered judgment for the plaintiff-carrier against the general contractor for $2,954.39 and for plaintiff-employee against the general contractor for $42,657.76 and ordered judgment in favor of the general contractor against the subcontractor for $30,224.92 (which amount would presumably conform to the degree of fault determined on the basis of comparative negligence against the respective parties), thereby awarding the general contractor less than the sum it was obliged to pay to plaintiffs. However, on motion for an amended order for judgment notwithstanding the

verdict or for a new trial by both the contractor and the employer-subcontractor, the trial court amended and corrected its order for judgment by giving the contractor judgment for indemnity against the subcontractor for the full amount of the judgment recovered by plaintiff against the prime contractor.[1] Both the contractor and subcontractor appeal from this order.

The appeals urge errors allegedly resulting from conflicts in common-law and statutory liabilities and from application of comparative negligence principles in allocation of fault. In the interim between the time the case was started and the time of trial, the legislature passed two statutes which, in the view of the parties at least, seemed to complicate the litigation. The first, of course, is the statute which provides for comparative negligence, Minn. St. 604.01, enacted in 1969; and the second is Minn. St. 176.061, subd. 10, also enacted in 1969, which provides that,

---

[1] The original order for judgment provided: "That plaintiff Jack Keefer have judgment against defendants Al Johnson Construction Co. and Peter Kiewit Sons' Co. in the sum of $42,657.76 together with his costs and disbursements herein.

"That plaintiff Pacific Employers Insurance Company have judgment against Al Johnson Construction Co. and Peter Kiewit Sons' Co. in the sum of $2,954.39 together with its costs and disbursements herein.

"That defendants and third party plaintiffs Al Johnson Construction Co. and Peter Kiewit Sons' Co. have judgment against third party defendant Wiscombe Southern Painting Co. in the sum of $30,224.92 together with their costs and disbursements herein."

The trial court's amended order provides: "It is Ordered that paragraph 3 of the order for judgment made by this Court and dated and filed November 14, 1969, which now reads:

" 'That defendants and third party plaintiffs Al Johnson Construction Co. and Peter Kiewit Sons' Co. have judgment against third party defendant Wiscombe Southern Painting Co. in the sum of $30,224.92 together with their costs and disbursements herein.' be, and hereby is, vacated and the following is substituted in lieu and stead thereof:

" 'That defendants and third party plaintiffs Al Johnson Construction Co. and Peter Kiewit Sons' Co. have judgment for indemnity against third party defendant Wiscombe Southern Painting Co. in the sum of $45,612.15 together with their costs and disbursements herein.' "

in the absence of a written agreement, an employer whose obligation is discharged by workmen's compensation cannot be liable to a third party for indemnity.

■ We direct our attention to appellant-subcontractor's first contention that there is no basis for the remedy of indemnity whether it be common law, equity, or express or implied contract. So much has been written in fairly recent decisions of this court, as well as other courts, on the principles, conditions, and applications of the remedy of indemnity that it would serve no purpose here to expand upon what we have said by further explanations or illustrations. Hendrickson v. Minnesota Power & Light Co. 258 Minn. 368, 104 N. W. 2d 843 (1960); Lunderberg v. Bierman, 241 Minn. 349, 63 N. W. 2d 355, 43 A. L. R. 2d 865 (1954); Thill v. Modern Erecting Co. 272 Minn. 217, 136 N. W. 2d 677 (1965); Daly v. Bergstedt, 267 Minn. 244, 126 N. W. 2d 242 (1964); Larsen v. Minneapolis Gas Co. 282 Minn. 135, 163 N. W. 2d 755 (1968); Rausch v. Julius B. Nelson & Sons, Inc. 276 Minn. 12, 149 N. W. 2d 1 (1967); Kenyon v. F. M. C. Corp. 286 Minn. 283, 176 N. W. 2d 69 (1970). American Dist. Telegraph Co. v. Kittleson, 179 F. 2d 946 (8 Cir. 1950), is a well-written decision which has particular application to the facts in this case; and Blackford v. Sioux City Dressed Pork, Inc. 254 Iowa 845, 118 N. W. 2d 559 (1962), should not be overlooked. See, also, Cooper v. Watson, 290 Minn. 362, 187 N. W. 2d 689 (1971).

In Hendrickson v. Minnesota Power & Light Co. *supra,* we noted that indemnity may be invoked among joint tortfeasors (258 Minn. 373, 104 N. W. 2d 848):

"[a]  Where the one seeking indemnity has incurred liability because of a breach of duty owed to him by the one sought to be charged.

"[b]  Where the one seeking indemnity has incurred liability merely because of failure, even though negligent, to discover or prevent the misconduct of the one sought to be charged.

"[c]  Where there is an express contract between the parties

containing an explicit undertaking to reimburse for liability of the character involved."

The trial court was of the view that recovery on the theory of indemnity was warranted not only because of a breach of the subcontractor's duty to follow instructions contained in the safety manual but also because there was an express provision in the subcontract by which the subcontractor undertook to reimburse the contractor for liability of the character involved.[2]

---

[2] Under the terms of Paragraph IX of the subcontract, subcontractor agreed: "To be bound to the Contractor by the terms of the General Contract, to conform to and comply with all of the terms of the General Contract and to assume toward the Contractor all the duties and obligations that the Contractor assumes in the General Contract toward the Owner in so far as they are applicable to this Sub-Contract unless changed in this Sub-Contract."

Paragraph V provides that subcontractor agrees: "To save the Owner and the Contractor harmless from all loss, cost or expense resulting either directly or indirectly from the failure of the Sub-Contractor faithfully to carry out any provision of this Sub-Contract."

In Paragraph VII, subcontractor agrees: "To adequately and properly protect his work of construction by lights, barriers, supports, signs and guards so as to avoid injury or damage to persons or property and to be directly responsible for damages to persons and property occasioned by failure so to do, or by any negligence of the Sub-Contractor or any of his officers, agents or employees in the performance of his work. The standards of protection shall not be less than those specified in the General Contract or required by law."

Plaintiff's Exhibit C, a safety manual incorporated by reference into the general contract was, by the terms of Paragraph IX, *supra,* applicable to subcontractor. The manual provides (§ 12-61): "Ventilation adequate to prevent the accumulation of flammable vapors to hazardous levels of concentration shall be provided in all areas where painting is done. When electric lights, switches, or electrical equipment are necessary, they shall be of the totally inclosed type."

G. C. 16 of the General Contract is a general condition dealing with accident prevention, which establishes certain job safety guidelines for the general contractor. Subparagraph (f) provides: "Compliance with the provisions of this article by subcontractors will be the responsibility of the Contractor."

Specifically, the subcontractor's active and immediate fault was its failure to provide ventilation in the working area and its failure to prohibit the use of exposed light bulbs. The trial court noted that, if the subcontractor had lived up to its agreement to comply with safety manual standards, the accident could have been avoided. While the subcontract provision for indemnification might well have been more explicit, we think that, whether the facts are viewed as a breach of the contractual duty to observe standards or a breach of an express contract for indemnity, the record fairly supports the trial court's determination.

The record further supports the trial court's determination that whatever negligence there may have been on the part of the contractor was imputed or vicarious. The right of indemnity inures to a person who, without active fault on his part, has been compelled by reason of a legal obligation to pay damages occasioned by the initial negligence of another and for which he himself is only secondarily liable. Here, the negligence of the subcontractor was active and primary as opposed to the negligence of the contractor, which was not morally culpable but merely constructive, technical, imputed, or vicarious. Adler's Quality Bakery, Inc. v. Gaseteria, Inc. 32 N. J. 55, 159 A. 2d 97, 81 A. L. R. 2d 1041 (1960); Waylander-Peterson Co. v. G. N. Ry. Co. 201 F. 2d 408, 37 A. L. R. 2d 1399 (8 Cir. 1953); Annotation, 97 A. L. R. 2d 616, 640 (applying the law of Minnesota).

■ It is next the contention of the subcontractor that when it provided workmen's compensation to the employee it had fulfilled its complete obligation. We follow those authorities (Lunderberg v. Bierman, *supra;* Hendrickson v. Minnesota Power & Light Co. *supra;* and American Dist. Telegraph Co. v. Kittleson, *supra*) which hold that the fact that an injured employee has received workmen's compensation for his injury will not prevent a common-law action against a third-party tortfeasor nor, in such an action, will it relieve the employer from all liability to third parties for injury done to them. The basis for the third party's action for indemnity against the insured employer

is the breach of an alleged independent duty or obligation owed to it by the employer. The right of the third party to indemnification against the employer is entirely independent of the elements of workmen's compensation. In the case before us, it was the subcontractor's failure to provide ventilation and a protected drop light which constituted a breach of its duty to protect the contractor from liability.

■ We think that the appellant subcontractor is correct in its contention that the trial court was in error to instruct with reference to comparative negligence as it related to the third-party actions between contractor and the subcontractor and to submit questions in the special verdict which would cast them in the situation of joint tortfeasors, as if they were both liable in contribution. In considering this point, it should be kept in mind that, if the subcontractor is liable to the contractor at all, it must be in indemnity because no common source of liability exists. Where there are elements of primary and secondary liability—which is ordinarily a question of law for the court—indemnity shifts the entire loss from one tortfeasor, who has been compelled to pay, to the shoulders of another who should bear it instead. Hanson v. Bailey, 249 Minn. 495, 83 N. W. 2d 252 (1957); Thill v. Modern Erecting Co. *supra*. It should also be kept in mind that the difference between primary and secondary liability, as used in determining the right of indemnity, is based, not on a difference in degrees of negligence or on any doctrine of comparative negligence, but on the difference in the character or kind of wrongs which caused the injury and in the nature of the legal obligation owed by each wrongdoer to the injured person. Adler's Quality Bakery, Inc. v. Gaseteria, Inc. *supra;* Fidelity & Cas. Co. of New York v. Federal Express, Inc. 136 F. 2d 35 (6 Cir. 1943); Builders Supply Co. v. McCabe, 366 Pa. 322, 77 A. 2d 368 (1951) ; Lunderberg v. Bierman, *supra;* 42 C. J. S., Indemnity, § 27.

An employer operating under the Workmen's Compensation Act cannot be a joint tortfeasor with the third party injuring

his employee because the act extinguishes the liability of the employer to the employee for negligence, and there can be no common liability to the employee. We accordingly hold that, under the facts in this case, there was no common source of liability between the employer-subcontractor and the third-party contractor, and, accordingly, there could be no issue of comparative negligence between them. Minn. St. 604.01. We further hold that it was proper for the trial court to submit the issue of comparative negligence in the common-law action between plaintiff-employee and the third-party contractor.

■ It should be observed that it was not until motions for a new trial or judgment notwithstanding the verdict were made by the parties (Rule 50.02, Rules of Civil Procedure) that the issues appeared in clear perspective. The trial court then correctly viewed the litigation as involving two separate and independent actions and amended its order for judgment to conform to the facts and the applicable law. In doing so, the trial court recast the issues, resolving them as if the plaintiffs had secured judgments against the third-party contractor by a separate trial, and determined that, in the action between the contractor and the employer-subcontractor, indemnity should be granted to the contractor for the amount of damages awarded in the common-law action. This decision was reached after applying all of the evidence introduced by the parties. The special verdict fixing plaintiff-workman's percentage of fault was correctly applied to the answer to the interrogatory fixing his damages; the resulting amount represented the figure for the amount of indemnity which was granted. The answers of the jury to interrogatories relating to comparative fault of the contractor and subcontractor were properly disregarded for, as we have already observed, those percentages could have reference only to contribution, which was not applicable in this case. Such interrogatories and the answers thereto were gratuitous and had no legal effect upon determinative issues before the court. In the indemnity action, the trial court properly concluded from an

examination of the evidence, as it related to elements of passive and active negligence of the parties, that the contractor was entitled to indemnity. While the parties may not have anticipated that the issues would be resolved in this manner, nothing has been submitted by briefs or arguments which convinces us that there was prejudicial error which would warrant that the trial court's judgment be disturbed.

We have held that, where an issue is submitted to the jury on an erroneous instruction or on a prejudicially restrictive theory, a new trial should be granted, but where it conclusively appears as a matter of law that the determination on the whole evidence is correct, it should be sustained. 14 Dunnell, Dig. (3 ed.) § 7170. If a party is entitled to a directed verdict at the trial, he is entitled to an order for judgment notwithstanding the verdict unless there is a reasonable probability that the adverse party would be able to make out a good cause of action or defense on another trial. Reiter v. Porter, 216 Minn. 479, 13 N. W. 2d 372 (1944). The fact that such relief should be granted with caution should not prevent its use where the right thereto is clear. First Nat. Bank v. Fox, 191 Minn. 318, 254 N. W. 8 (1934); Cofran v. Swanman, 225 Minn. 40, 29 N. W. 2d 448 (1947).

We think the trial court's determination was right as a matter of law. It is not contended that the award for damages is excessive. There is nothing in the record or briefs which would persuade us that there would be a substantially different result in another trial or that there was any prejudice to the parties in the way the evidence was submitted. Moreover, it may be observed that, while the accident occurred in 1962, the actions did not come on for trial in the district court until September 1969. No explanation is given for the delay. Because the merits of the case were fully presented and because the trial court has the obligation under such circumstances to see that litigation should end, the judgment should be affirmed. Arcadia Park Assn. Inc. v. Anderson, 177 Minn. 487, 225 N. W. 441 (1929).

■ Appellant subcontractor's contention that Minn. St.

176.061, subd. 10, effective September 1, 1969, which permits indemnity against an insured employer only where there is a written agreement therefor, requires that indemnification be denied, may be disposed of by referring to our holding in Cooper v. Watson, 290 Minn. 362, 187 N. W. 2d 689 (1971), that the statute does not have retroactive effect. The statute, consequently, would have no bearing on this case since the accident occurred June 12, 1962.

■ Appellant subcontractor's further contention that it would be in violation of U. S. Const. Art. I, § 10, to give retrospective application to Minn. St. 604.01, the comparative negligence statute, may be disposed of by referring to our decision in Peterson v. City of Minneapolis, 285 Minn. 282, 173 N. W. 2d 353 (1969), where it was held that the act applied retroactively and that such application did not abrogate vested rights so as to be constitutionally impermissible. It may be added, however, that the views expressed with reference to the application of that statute herein are limited to the issues raised and briefed in this appeal.

Other questions raised by the appeal are without sufficient merit to require discussion.

Affirmed.

KELLY, JUSTICE (concurring specially).
I concur in the result.