DAVID BJORKLUND v. SYLVESTER HANTZ
AND OTHERS.
BOMBARDIER, LTD., APPELLANT.

208 N. W. 2d 722.

June 1, 1973—No. 43271.

*Sullivan, Hanft, Hastings, Fride & O'Brien, Tyrone P. Bujold,*
and *William M. Burns,* for appellant.

*Reavill, Neimeyer, Johnson, Fredin & Killen, John J. Killen,
Jr.,* and *Terry C. Hallenbeck,* for respondent Grover.

*MacDonald, Munger, Fillenworth & Bang, Harry L. Munger,*
and *James J. Bang,* for respondent Bjorklund.

*Palmer, Hood, Crassweller & McCarthy* and *Ray G. Palmer,*
for respondent Hantz.

Heard before Knutson, C. J., and Otis, Peterson, and Kelly, JJ.

PER CURIAM.

This is a so-called products liability case arising out of a personal injury which the jury found resulted from a defective throttle on a snowmobile. The manufacturer raises three issues on appeal. First, the admissibility into evidence of a hypothetical question; second, the sufficiency of the evidence to support the verdict; and, third, the right of a codefendant retailer to indemnity against the manufacturer. We affirm.

The accident out of which plaintiff David Bjorklund's injury arose occurred on February 22, 1969, in the outskirts of Duluth, when a snowmobile he was operating was struck by one approaching from his rear, operated by defendant Sylvester Hantz. Plaintiff's claim against defendant Bombardier, Ltd., was based on evidence that Hantz was unable to stop his snowmobile because a taillight wire in the vicinity of the carburetor arm caused the engine to race.

The jury awarded plaintiff $65,000 in damages and attributed 45 percent of the negligence to Bombardier, the manufacturer;

30 percent to Grover Marine Sales, the retailer; and 25 percent to Hantz, the operator. Thereupon, the court granted judgment in favor of Grover against Bombardier for indemnity. Only Bombardier appeals.

1. Bombardier complains that it was error to permit an expert for the plaintiff to answer a hypothetical question regarding the cause of the throttle's being stuck. Bombardier asserts the question was incomplete and inaccurate because it did not include an assumption that the taillight wire was not observed by various witnesses after the accident; that a repairman discovered a bent throttle retainer bracket on the handlebar the next day; and that after the bracket was repaired the machine gave no further difficulty. For two reasons we find no prejudice in the court's permitting the hypothetical to be asked. First, the assumption concerning the repairman's observation was vigorously contested, and, second, the expert testified that if all the assumptions not included in the hypothetical were correct he would reverse his opinion and dismiss the taillight wire as a cause of the accident. Consequently, the jury was fully apprised of all the facts on which it could assess the validity of the expert opinion and resolved the conflicts in favor of plaintiff.

2. Bombardier argues that the collision occurred because of the speed at which Hantz operated his snowmobile and its proximity to plaintiff's machine as they traveled. If, as Hantz claimed, his engine raced after the accident, Bombardier contended it was because the accident caused a retainer bracket on the right handlebar to bend, jamming the controls. The theories advanced by plaintiff and by defendant were each supported by the testimony of a number of witnesses, including experts who came to diametrically opposed conclusions. Whether the engine did, in fact, race prior to the accident, and, if so, whether that was caused by an improperly placed taillight wire next to the carburetor arm, or whether the collision occurred from unrelated causes and the throttle jammed only because the retainer bracket was bent in the accident, were disputed fact questions to be re-

solved by the jury. There was competent testimony to support either theory, and it is not our function to decide which was the more persuasive.

3. The jury found "the product sold by defendant Grover Marine, Inc. in such a defective condition when it left the possession and control of defendant Grover as to be unreasonably dangerous to a prospective user or person to be reasonably expected to be in the vicinity of the probable use of its product" and that Grover was negligent "in not discovering and correcting the defect." The trial court granted Grover indemnity against Bombardier on the authority of Hendrickson v. Minnesota Power & Light Co. 258 Minn. 368, 373, 104 N. W. 2d 843, 848 (1960). There we approved a rule granting indemnity "[w]here the one seeking indemnity has incurred liability merely because of failure, even though negligent, to discover or prevent the misconduct of the one sought to be charged."[1] Bombardier, on the other hand, relies on Kenyon v. F. M. C. Corp. 286 Minn. 283, 176 N. W. 2d 69 (1970), where we held that the Hendrickson rule does not apply if the retailer's negligence is independent and concurrent. In Kenyon, however, there was not only a negligent failure to inspect, but a negligent failure to warn the purchaser of known hazards, as well as negligence in failing to lubricate properly the machine which caused plaintiff's injury. The fact that in the instant case the retailer extensively serviced the machine, lubricated it, and made a number of adjustments does not bring the case within the Kenyon rule in the absence of a showing that it performed these services negligently. The jury found only that its negligence consisted of not discovering and correcting defects for which Bombardier was responsible.

Finally, we are invited to adopt a new rule which would bring to bear the comparative negligence statute, Minn. St. 604.01, on

---

[1] See, also, Hanson v. Bailey, 249 Minn. 495, 506, 83 N. W. 2d 252, 260 (1957); White v. Johnson, 272 Minn. 363, 368, 137 N. W. 2d 674, 677 (1965); and Keefer v. Al Johnson Const. Co. 292 Minn. 91, 98, 193 N. W. 2d 305, 310 (1971).

claims for indemnity. Bombardier cites Bielski v. Schulze, 16 Wis. 2d 1, 114 N. W. 2d 105 (1962), as authority for apportioning indemnity according to degree of culpability rather than permitting 100-percent recovery against the indemnitor. Bielski was a contribution case where the joint tortfeasors normally would have been subject to liability in equal amounts. As a practical matter, under the comparative negligence statute contribution between joint tortfeasors is no longer on a 50-50 basis but is apportioned in accordance with the degree of negligence attributable to each. This is not the rule, however, with respect to indemnity, which is an equitable doctrine of longstanding. Its application is reserved for those rare cases in which the parties seeking indemnity have been guilty of no active negligence. We are not disposed to lightly overrule these well-established principles. In any event, the facts of this case do not make it a proper vehicle for so doing.

Affirmed.