## DAVID N. CARLSON v. MERRILL J. SMOGARD. QUALITY MERCURY, INC., THIRD-PARTY DEFENDANT.

215 N. W. 2d 615.

February 22, 1974—No. 44186.

*Robb, Van Eps & Gilmore* and *John R. deLambert,* for appellant.

*Lasley, Gaughan, Reid & Stich* and *Douglas Dale Reid, Jr.,* for respondent.

Heard before Knutson, C. J., and Kelly, Todd, and Scott, JJ., and reconsidered and decided by the court en banc.

SCOTT, JUSTICE.

Defendant and third-party plaintiff, Merrill J. Smogard, appeals from a judgment entered pursuant to a district court order dismissing his third-party complaint against Quality Mercury, Inc., employer of the plaintiff. We grant discretionary review,[1] and reverse.

Plaintiff, David N. Carlson, brought this action against Smogard, alleging negligence in the installation of a hood latch extension device in his (defendant's) automobile. Smogard denied any negligent conduct and alleged, through a third-party complaint against plaintiff's employer, Quality Mercury, Inc., that the sole cause of plaintiff's injuries was Quality's negligent conduct and that Smogard is entitled to contribution or indemnity from Quality. The trial court, on motion of the third-party defendant, granted it summary judgment on the basis of Minn. St. 176.061, subd. 10, which provides:

"If an action as provided in this chapter prosecuted by the employee, the employer, or both jointly against a third person, results in judgment against such third person, or settlement by such third person, the employer shall have no liability to reimburse or hold such third person harmless on such judgments or

---

[1] In Zentz v. ITT Blackburn Corp. 298 Minn. 219, 214 N. W. 2d 466 (1974), this court held that inasmuch as judgment was not entered adjudicating all the claims, rights, and liabilities of all the parties pursuant to Rule 54.02, Rules of Civil Procedure, the judgment is not final and is therefore nonappealable.

settlements in absence of a written agreement to do so executed prior to the injury."

There was no such agreement between Smogard and Quality.

Since this matter was decided upon the motion for summary judgment, the facts available to this court are found in the parties' pleadings and briefs and in the deposition of the defendant and third-party plaintiff.

Defendant and third-party plaintiff, Smogard, purchased a 1969 used automobile from the third-party defendant, Quality Mercury, Inc., on April 10, 1971. A purchase invoice executed at that time obligated Quality to make certain repairs before delivery to Smogard. Included in these repairs were: (1) Fix the front end; (2) fix hood latch; (3) check battery; (4) change oil and new filter. Upon receiving delivery of the automobile, Smogard was assured that these items had been repaired as agreed. It seems that on several occasions prior to the injury Smogard returned the automobile to Quality for various reasons, among them the failure of the hood latch to operate properly. A subsequent problem with the radiator necessitated frequent opening of the hood, so apparently Smogard then attached an extension wire to hold the opening rod in place. This was the only addition he made to the hood latch device and he allegedly changed nothing in the actual latch operation.

In June 1971 the transmission failed, and the car was again returned to Quality for repair at no cost to Smogard. The repair took one week, and Smogard was assured at that time by plaintiff, David N. Carlson, that the car was in good operating condition. There was no specific mention by either party that a repair of the hood latch was either contemplated or completed at this time. Carlson then allegedly offered to test-drive the car for Smogard, to prove that the transmission and a "shimmy" in the front end of the car were fixed. Carlson allegedly suffered a heart attack as a result of the hood flying open while he was test-driving the automobile at a speed of approximately 50 to 60 miles per hour on the freeway. The car was brought under con-

trol without further incident, and plaintiff and defendant returned to Quality. Carlson mentioned that he had had a heart problem, and he was then taken to a hospital. He has made a claim for workmen's compensation and pursuant to Minn. St. 176.061, subd. 5, also brought the action against Smogard.

Carlson's complaint alleged that he was shocked and frightened when the hood flew up, causing a heart attack resulting in medical expenses and disability. It was further alleged that the sole and proximate cause of the accident was the negligence and carelessness of the defendant in the installation of a homemade locking device for the hood. Judgment was sought in the amount of $100,000. Smogard denied all negligent conduct and asserted through a third-party complaint that the sole and proximate cause of Carlson's injuries was the negligent, careless, and unlawful conduct of Quality. Smogard also alleged breach of express and implied warranties, misrepresentation, breach of contract, and strict liability in tort for selling a defective vehicle. He sought indemnification or contribution.

Quality, third-party defendant-respondent, states in its brief: "The issue presented to the court by this appeal is the question of the constitutionality of M. S. A. 176.061, subd. 10, and no further hearings can be of assistance to the court in making that decision." It thus appears that the third-party defendant, who prevailed in the trial court by the application of § 176.061, subd. 10, is putting the issue of the constitutionality of this statute directly to this court.

On the other hand, appellant, who did not prevail because of the operation of this statute, argues that "this case is not ripe on the basis of the present record for the Court to reach the constitutional issue," and suggests that it be remanded to the trial court in line with Haney v. International Harvester Co. 294 Minn. 375, 201 N. W. 2d 140 (1972). The appellant evidently seeks the identical relief granted in Haney on nearly indistinguishable issues. Haney was reversed and remanded in order to

complete a factual setting, but this court is advised that the case has been settled and will not be brought before us again.

Aside from the surprising stands on the part of both parties, which would seem immediately contrary to their own best interests, their controversy has presented this court with the opportunity to rule directly on this troublesome and recurring problem. Therefore, the immediate and only issue before us at this time is whether Minn. St. 176.061, subd. 10, of the Workmen's Compensation Act is a violation of the due process clause of the Fifth and Fourteenth Amendments of the United States Constitution and of Article 1, § 8, of the Minnesota Constitution.[2]

In Haney we said, "[T]here may be a due process violation when the third-party tortfeasor's right of indemnity is extinguished by the workmen's compensation laws without providing him a reasonable substitute for his right." 294 Minn. 385, 201 N. W. 2d 146. A similar challenge was made to the Massachusetts no-fault insurance laws in Pinnick v. Cleary, 271 N. E. 2d 592 (Mass. 1971). The court held that due process was not violated since the no-fault statute (1) provided a reasonable substitute for preexisting common-law rights, and (2) had a rational relation to a legitimate legislative objective. In applying § 176.061, subd. 10, where is (1) the reasonable substitute for preexisting common-law rights and (2) the rational relationship to a legitimate legislative objective? Smogard has absolutely no connection with the employer-employee relationship of Carlson and Quality Mercury.

It is true, as pointed out in the briefs, that a law is not to be declared unconstitutional by this court unless palpably so, and only when absolutely necessary. But what of Smogard, who has absolutely no relationship to the Workmen's Compensation Act but may be found liable in a situation wherein indemnification should lie?

---

[2] Smogard has notified the attorney general, pursuant to Rule 144, Rules of Civil Appellate Procedure, that the constitutionality of Minn. St. 176.061, subd. 10, is in issue.

In Hendrickson v. Minnesota Power & Light Co. 258 Minn. 368, 374, 104 N. W. 2d 843, 849 (1960), we stated:

"* * * [T]his court has long held that the Workmen's Compensation Act is intended to control only the rights between employer and employee and does not by its terms prevent contribution or indemnity where appropriate."

The Hendrickson case goes further to delineate the limited situations in which indemnification may be had:

"(1)   Where the one seeking indemnity has only a derivative or vicarious liability for damage caused by the one sought to be charged.

"(2)   Where the one seeking indemnity has incurred liability by action at the direction, in the interest of, and in reliance upon the one sought to be charged.

"(3)   Where the one seeking indemnity has incurred liability because of a breach of duty owed to him by the one sought to be charged.

"(4)   Where the one seeking indemnity has incurred liability merely because of failure, even though negligent, to discover or prevent the misconduct of the one sought to be charged.

"(5)   Where there is an express contract between the parties containing an explicit undertaking to reimburse for liability of the character involved." 258 Minn. 372, 104 N. W. 2d 848.

See, also, Hillman v. Ellingson, 298 Minn. 346, 215 N. W. 2d 810 (1974), and Sorenson v. Safety Flate, Inc. 298 Minn. 353, 216 N. W. 2d 859 (1974).

In Keefer v. Al Johnson Const. Co. 292 Minn. 91, 100, 193 N. W. 2d 305, 311 (1971), this court stated:

"* * * The basis for the third party's action for indemnity against the insured employer is the breach of an alleged independent duty or obligation owed to it by the employer. The right of the third party to indemnification against the employer is entirely independent of the elements of workmen's compensation."

Furthermore, in Lunderberg v. Bierman, 241 Minn. 349, 364, 63 N. W. 2d 355, 365 (1954), we added:

"* * * The workmen's compensation act gave to both the employee and the employer some benefits which they did not have under the common law. In return therefor they surrendered some of the advantages which they had under the common law. McGough v. McCarthy Improvement Co. 206 Minn. 1, 287 N. W. 857. That is not true of a third party standing in the position of Mrs. Bierman. She gained nothing by the workmen's compensation act and, consequently, should not be deprived of a right which she would have under the common law."

By § 176.061, subd. 10, the Workmen's Compensation Act, which was clearly intended to control only the rights between employer and employee, would limit the rights outlined in the Hendrickson case by permitting a third person who has been sued by an injured employee and would otherwise be entitled to indemnity from the employer to recover it only if a written agreement requiring the employer to reimburse or hold such third person harmless had been entered by them prior to the employee's injury. The practicality of such legislation may go unquestioned when viewed as a provision to establish efficient and fair rules applicable to the relationship most often involved in a third person's claim for indemnity against the employer whose injured employee sues the third party; i.e., the contractor-subcontractor relationship. There, two parties with substantially equal bargaining power are dealing in contractual situations in which injuries arise and indemnification is contemplated. But it is doubtful that a private party purchasing an automobile would envision demanding a written agreement from the dealership to provide indemnification. And even less practical is the idea that a dealer would so agree, as the bargaining power of the average consumer is less than commensurate with that of an organized business concern. The result would be that a common-law right of action will be abrogated without providing a rea-

sonable substitute. No legitimate objective is fostered by preventing indemnification to a third-party tortfeasor from a negligent employer. No substitute remedy has been provided to Smogard.

Both state and Federal courts have been troubled by this continually bothersome issue. There is no way of bypassing the clear words of the statute by some sidestepping interpretation. Therefore, as reluctant and cautious as this court has been in declaring a legislative enactment unconstitutional, we know of no other way to correct this otherwise "unrightable wrong."

We therefore hold that Minn. St. 176.061, subd. 10, violates the due process clause of the Fifth and Fourteenth Amendments of the United States Constitution and violates Article 1, § 8, of the Minnesota Constitution. We reaffirm the holding in Hendrickson v. Minnesota Power & Light Co. *supra*, as to situations in which indemnification may be had.

Reversed.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.