Warren SHORE, Plaintiff,

v.

MINNEAPOLIS AUTO AUCTION, INC., Defendant and Third Party Plaintiff, Respondent,

v.

RECREATIONAL ENGINEERING, INC., Third Party Defendant, Appellant.

No. C7–87–116.

Court of Appeals of Minnesota.

Aug. 18, 1987.

Review Denied Oct. 30, 1987.

John L. Tambornino, Minneapolis, for respondent.

Janet Waller, Minneapolis, for appellant.

Heard, considered and decided by NIERENGARTEN, P.J., and FOLEY and RANDALL, JJ.

## OPINION

FOLEY, Judge.

Recreational Engineering, Inc. appeals from a judgment awarding respondent Minneapolis Auto Auction, Inc., formerly Golden Valley Dodge, indemnification for payments made to Recreational Engineering's employee in settlement of a personal injury action and from the denial of its motion for summary judgment to recover workers' compensation benefits paid to Shore. We affirm.

## FACTS

On June 26, 1979, Shore was injured when the van he was driving was struck from behind by another van driven by Richard Mattson. Both vans involved in the accident were owned by Minneapolis Auto. Shore and Mattson were both employed by Recreational Engineering at the time of accident. They were transporting the vans to Recreational Engineering's place of business for customization. After customization, it was intended that the vans would be returned to Minneapolis Auto for retail sale.

The accident occurred on a freeway entry ramp when Mattson collided with Shore's van, which had stopped due to backed-up traffic. Shore suffered injuries as a result of the accident and has received workers' compensation benefits from Recreational Engineering in the total amount of $30,603.78, $20,271.74 of which is subject to subrogation pursuant to Minn.Stat. § 176.061 (1978).

Shore brought a personal injury claim against Minneapolis Auto pursuant to Minn.Stat. § 170.54 (1978), under which the owner of an automobile is responsible for the acts of its permissive user. To settle the claim, Minneapolis Auto paid Shore $25,000 in exchange for a "Naig Release". Recreational Engineering was notified of the settlement negotiations and agreed that the $25,000 settlement was fair and reasonable.

After settling Shore's personal injury claim, Minneapolis Auto and Recreational Engineering cross-motioned for summary judgment on issues of indemnification and subrogation. Minneapolis Auto sought indemnification from Recreational Engineering for the $25,000 settlement amount it paid to Shore. Recreational Engineering sought to recover from Minneapolis Auto the $20,271.74 subrogatable portion of the workers' compensation benefits it paid to Shore.

The trial court granted third party plaintiff Minneapolis Auto's indemnity claim in the amount of $25,000 plus accrued interest and denied Recreational Engineering's subrogation claim. Recreational Engineering appeals from the judgment.

## ISSUES

1. Did the trial court err in granting a third party, who is liable solely as a result of the Safety Responsibility Act, indemnification from the employer of both the injured party and the negligent permissive user?

2. Were the employer and the third party engaged in a common enterprise?

## ANALYSIS

1. It is well established that the right to indemnity is not lost by reason of a settlement with the plaintiff. *Altermatt v. Arlan's Department Store, Inc.*, 284 Minn. 537, 538, 169 N.W.2d 231, 232 (1969). *See also Samuelson v. Chicago, Rock Island & Pacific Railroad Co.*, 287 Minn. 264, 268, 178 N.W.2d 620, 623 (1970) (judgment of liability is not a condition precedent to recovery of contribution or indemnity); *Gustafson v. Johnson*, 235 Minn. 358, 364, 51 N.W.2d 108, 112 (1952) (a judgment es-

tablishing liability is not a necessary prerequisite to an action for contribution between joint tortfeasors); *Duluth Mesabe & Northern Railroad Co. v. McCarthy*, 183 Minn. 414, 417, 236 N.W. 766, 767 (1931) (contribution between joint tortfeasors may exist where the ground of their original common liability was simple negligence in a lawful undertaking and the one seeking contribution was not guilty, intentionally, either of wrong or illegal act). We also note that the fellow-servant doctrine does not bar an action for indemnification by a third party against an employer. *See Lunderberg v. Bierman*, 241 Minn. 349, 356, 63 N.W.2d 355, 360–61 (1954).

The law of indemnification was discussed in depth by the Minnesota Supreme Court in *Hendrickson v. Minnesota Power & Light Co.*, 258 Minn. 368, 104 N.W.2d 843 (1960), *overruled in part by Tolbert v. Gerber Industries, Inc.*, 255 N.W.2d 362 (Minn.1977). In *Hendrickson*, Minnesota Power claimed it should be allowed either contribution or indemnification from the employer of the injured employee. After a detailed discussion, in which the supreme court distinguished indemnification from contribution, it held:

> A joint tortfeasor may generally recover indemnity only in the following situations:
>
> (1) Where the one seeking indemnity has only a derivative or vicarious liability for damage caused by the one sought to be charged.
>
> (2) Where the one seeking indemnity has incurred liability by action at the direction, in the interest of, and in reliance upon the one sought to be charged.
>
> (3) Where the one seeking indemnity has incurred liability because of a breach of duty owed to him by the one sought to be charged.
>
> (4) Where the one seeking indemnity has incurred liability merely because of failure, even though negligent, to dis-

cover or prevent the misconduct of the one sought to be charged.

> (5) Where there is an express contract between the parties containing an explicit undertaking to reimburse for liability of the character involved.[1]

*Id.* at 372–73, 104 N.W.2d at 848 (footnotes omitted).

Following *Hendrickson*, the supreme court upheld an indemnity award against an employer who had breached contractual duties to observe safety rules and an express contract of indemnity. *Keefer v. Al Johnson Construction Co.*, 292 Minn. 91, 193 N.W.2d 305 (1971). In *Keefer*, the supreme court found that the negligence of the third party was imputed or vicarious as compared with the active negligence of the employer. *Id.* at 100, 193 N.W.2d at 310–11. The *Keefer* court also noted: "The right of the third party to indemnification against the employer is entirely independent of the elements of workmen's compensation." *Id.* at 101, 193 N.W.2d at 311.

This case falls within rule (1) of *Hendrickson*. In that case, the supreme court cited *Lunderberg* as authority for the rule (1) proposition that indemnity applies "[w]here the one seeking indemnity has only a derivative or vicarious liability for damage caused by the one sought to be charged." *Hendrickson*, 258 Minn. at 372–73 n. 16, 104 N.W.2d at 848 n. 16. In *Lunderberg*, Bierman, the automobile owner, left her car with Lunderberg Motors for repairs. A Lunderberg Motors employee was driving Bierman's car when an accident occurred that injured a fellow Lunderberg Motors' employee. The injured employee collected workers' compensation from his employer and then brought an action against Bierman under the Safety Responsibility Act. Bierman claimed that if she was liable to the injured employee, then she was entitled to indemnification from the employer. The supreme court agreed, stating:

> [W]here the owner of an automobile has become liable to a third person * * *

---

**1.** *Carlson v. Smogard*, 298 Minn. 362, 215 N.W.2d 615, 620 (1974), reaffirmed *Hendrickson* with regard to the exceptional situations in which indemnification applies. *Tolbert v. Gerber Industries, Inc.*, 255 N.W.2d 362 (Minn.1977) overruled rule four of *Hendrickson*.

solely by virtue of the Financial Responsibility Act, such owner is entitled to recover indemnity from the operator of the car in the absence of any *active* negligence chargeable to the owner.

*Lunderberg*, 241 Minn. at 355, 63 N.W.2d at 360 (emphasis supplied).

Recreational Engineering, however, argues that *Lambertson v. Cincinnati Corp.*, 312 Minn. 114, 257 N.W.2d 679 (1977), has eroded the *Lunderberg* holding. Lambertson was injured when a press brake owned by his employer failed. Cincinnati, the manufacturer of the press brake, made recommendations for safety appliances on the brake press, but the employer ignored them. The jury allocated the fault as follows: plaintiff 15%; manufacturer 25%; and employer 60%. Cincinnati's claim for contribution or indemnification from the employer was denied by the trial court.

Initially, Cincinnati sought indemnity from the employer. The supreme court held:

Since the independent acts of negligent manufacture and sale by Cincinnati and refusal of safety devices by [the employer] *combined to produce plaintiff's injury*, liability should be apportioned between them, not shifted entirely to one or the other. Therefore, if Cincinnati is entitled to any remedy, the remedy is contribution.

*Lambertson*, 312 Minn. at 127, 257 N.W.2d at 688 (emphasis supplied).

In considering Cincinnati's contribution claim, the supreme court found it unfair that Cincinnati should be forced to bear the entire burden of plaintiff's recovery when it was only 25% negligent. The supreme court also recognized that granting Cincinnati contribution would result in substantial employer participation in its employee's common-law recovery despite the exclusive-remedy clause of the Workers' Compensation Act. As a result, the *Lambertson* court held that Cincinnati was entitled to "contribution against [the employer] in an amount proportional to its percentage of negligence but not to exceed its total work-

ers' compensation liability to plaintiff." *Id.* at 130, 257 N.W.2d at 689.

A leading commentator on workers' compensation law, has called the controversy surrounding indemnity and contribution against employers in third party actions, "[p]erhaps the most evenly-balanced controversy in all of compensation law." 2A Larson, Workers' Compensation Law, § 76.10. The *Lambertson* court summarized the controversy:

If contribution or indemnity is allowed, the employer may be forced to pay his employee—through the conduit of the third-party tortfeasor—an amount in excess of his statutory workers' compensation liability. This arguably thwarts the central concept behind workers' compensation, i.e., that the employer and employee receive the benefits of a guaranteed, fixed-schedule, nonfault recovery system, which then constitutes the exclusive liability of the employer to his employee. If contribution or indemnity is not allowed, a third-party stranger to the workers' compensation system is made to bear the burden of a full common-law judgment despite possibly greater fault on the part of the employer. This obvious inequity is further exacerbated by the right of the employer to recover directly or indirectly from the third party the amount he has paid in compensation regardless of the employer's own negligence. Thus, the third party is forced to subsidize a workers' compensation system in a proportion greater than his own fault and at a financial level far in excess of the workers' compensation schedule.

*Lambertson*, 312 Minn. at 120, 257 N.W.2d at 684 (citations omitted).

Subsequently, in *Horton v. Orbeth, Inc.*, 342 N.W.2d 112 (Minn.1984), the Minnesota Supreme Court discussed the *Lambertson* holding:

[W]hile *Lambertson* speaks in terms of contribution, the real impact of the decision was the limitation of the negligent employer's right of subrogation. The Workers' Compensation Act, while imposing on an employer liability to his injured employee for the benefits pre-

scribed by the Act—without regard to the employer's fault—also affords the employer a right to reimbursement from the proceeds of the employee's action against a third-party tortfeasor—again without regard to the employer's fault. In *Lambertson* we ameliorated the manifest inequity of requiring a third-party tortfeasor not only to compensate the injured worker but also to indemnify the worker's more negligent employer, by requiring the employer to "contribute" to the award. We held that although contribution was to be proportional to the employer's negligence, it could not exceed the level of common liability. The employer was obligated to contribute only up to the amount of workers' compensation benefits payable even though the employer's fault-based share of the damages would have been greater. In short, contribution was merely a vehicle for offsetting a negligent employer's right of subrogation.

*Id.* at 115 (citations omitted).

In the present case, the settlement between Shore and Minneapolis Auto is not challenged as unfair or unreasonable, nor is it claimed that either Minneapolis Auto or Recreational Engineering are anything but vicariously liable to Shore. Unlike *Lambertson*, percentage fault has not been apportioned in this case. Here, Recreational Engineering is liable solely as a result of the Workers' Compensation Act, and Minneapolis Auto is liable solely as a result of the Safety Responsibility Act. Accordingly, the sole issue for our determination is whether a third party who is statutorily liable may pass on that liability to the employer of the actively negligent party.

It is undisputed that the driver who caused the accident was within the course and scope of his employment with Recreational Engineering. The driver owed a duty to drive his vehicle with due care. His failure to do so caused Shore's injuries.

■■ "The right of indemnity inures to a person who, without active fault on his part, has been compelled by reason of legal obligation to pay damages occasioned by the initial negligence of another and for which he himself is only secondarily liable." *Keefer*, 292 Minn. at 100, 193 N.W.2d at 310. Indemnification is a flexible, equitable remedy designed to accomplish a fair allocation of loss among parties. Such a remedy should be used to achieve fairness as applied to a particular set of facts. On these facts, fairness dictates that Recreational Engineering, whose employee-driver failed to use due care, should bear the responsibility for the negligent actions of its employee.

■■ Since the holding and discussion in *Lambertson* does not address the indemnification issues discussed in *Lunderberg*, we hold that *Lunderberg* is still good law. As the facts of this case are nearly identical to the facts in *Lunderberg*, we find that the trial court did not err in granting Minneapolis Auto indemnification in the amount of $25,000. Nor did the trial court err in denying Recreational Engineering's subrogation claim. We agree with the trial court's finding that:

While Recreational Engineering may have a valid subrogration claim for some portion of the Workers' Compensation Benefits it paid to [Shore], it is needlessly circuitous to award the subrogation recovery against [Minneapolis Auto] who would have a corresponding right of indemnity back against [Recreational Engineering].

Finally, we note, as the supreme court did in *Lambertson*, that this problem is a statutory one which demands a comprehensive solution in statutory form. *See Lambertson*, 312 Minn. at 129, 257 N.W.2d at 688.

2. Recreational Engineering argues that if *Lambertson* is not applicable to this case, then Minn.Stat. § 176.061, subd. 4 (1978), precludes Minneapolis Auto from asserting a right of indemnification. Minn. Stat. § 176.061, subd. 4, provides that third party liability applies,

only if the employer liable for compensation and the other party legally liable for damages are insured or self-insured and engaged in the due course of business, (a) in furtherance of a common enterprise, or (b) the accomplishment of the

same or related purposes in operation on the premises where the injury was received at the time thereof.

*Id.* Recreational Engineering asserts that as commercial entities engaged in the common enterprise of customizing vehicles, it and Minneapolis Auto were subject to the same hazards of automobile transportation when they undertook their "common activity" of customizing and selling vehicles.

■ Minn.Stat. § 176.061, subd. 4 does not apply to indemnity claims. Instead, it limits the rights of an injured employee where the employer and the third party are engaged in a common enterprise. A common enterprise is found only where the employer and the third party are engaged in the same project and exposed to the same or similar hazards. *Kaiser v. Northern States Power Co.,* 353 N.W.2d 899, 906 (Minn.1984) (where two employers perform different type of work and where performance of jobs is only generally related, common activity requirement is not met); *Schleicher v. Lunda Construction Co.,* 385 N.W.2d 15, 18–19 (Minn.Ct.App.1986), *aff'd,* 406 N.W.2d 311 (Minn.1987) (mere supplying of product by one employer to another does not bring employers within common enterprise provision).

In this case, Minneapolis Auto, a new car dealer, paid Recreational Engineering, a body shop, to customize its vehicles. Minneapolis Auto derives its profit from the sale of customized vehicles, while Recreational Engineering derives its profit from performing customization services to the vehicle. The trial court properly found that there is little in common between one who sells new vehicles and one who customizes those vehicles.

## DECISION

Affirmed.

NIERENGARTEN, J., concurring specially.

NIERENGARTEN, Judge, concurring specially.

I concur. As the majority notes, the problem presented here is a statutory one "which demands a comprehensive solution in statutory form." The language adopted by the *Lambertson* court put it nicely.

It is rather inconsiderate to force courts to speculate about legislative intention on the strength of statutory language, in the framing of which the draftsmen had not the remotest trace of the present question in their minds.

*Lambertson v. Cincinnati Corp.,* 312 Minn. 114, 129, 257 N.W.2d 679, 689 (Minn. 1977).

Both *Lunderberg* and *Lambertson* stress the fact that the Workers' Compensation Act is not intended to affect the rights of third parties against the employer. The Workers' Compensation Act gives to both employer and employee some benefits which they did not have at common law. The employer's liability is limited and the employee need not show negligent conduct. This *quid pro quo* relationship does not exist as to third parties. Why should they be burdened by the Workers' Compensation Act when they receive no benefits from it?

It is unfair * * * to pull the third party within the principle of mutual sacrifice when his part is to be all sacrifice and no corresponding gain."

*Lambertson,* 312 Minn. at 129, 257 N.W.2d at 689.