**ESTATE OF Julia DEAN, Deceased, by Larry Allen DEAN, Administrator, Appellee,**

v.

**AIR EXEC, INC., Appellant.**

**No. 94–952.**

Supreme Court of Iowa.

July 19, 1995.

David A. Tank of Davis, Hockenberg, Wine, Brown, Koehn & Shors, P.C., Des Moines, for appellant.

Steven Lawyer of Lawyer, Lawyer & Associates, Des Moines, and John D. Stonebraker of McDonald, Stonebraker & Cepican, Davenport, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, NEUMAN, and TERNUS, JJ.

CARTER, Justice.

The sole issue on this appeal is whether the owner of an aircraft piloted by another is vicariously liable to a coemployee of the pilot who was killed as a result of the pilot's negligence in operating the aircraft. The owner of the plane sought summary judgment on the theory that, absent gross negligence, the coemployee immunity granted the lessee under Iowa Code section 85.20 (1991) should also inure to the benefit of parties that are vicariously liable for the coemployee's negligence. In denying summary judgment, the district court concluded that it is

---

the negligence of the operator rather than the liability of the operator that triggers the vicarious liability of aircraft owners under Iowa Code section 328.1(19) and section 328.41 (1991). Because we agree with that conclusion, we affirm the order of the district court.

On August 6, 1991, George Rump and plaintiff's decedent, Julia Dean, were directed by their common employer to travel from Fort Madison, Iowa, to Ottumwa, Iowa. There, they were to pick up another coemployee and, together, travel by air to Kansas City, Missouri. To carry out his employer's instructions, Rump leased a Cessna 172 aircraft in Fort Madison from the defendant, Air Exec, Inc. (Air Exec). Rump and Dean then proceeded toward Ottumwa in that aircraft with Rump acting as pilot of the plane.

In approaching the Ottumwa airport, the plane crashed, killing both Rump and Dean. Dean's personal representative commenced the present action against Air Exec, alleging that the crash had been caused by Rump's negligence and that Air Exec, as the owner of the aircraft, was liable for the negligence of its lessee. Dean's personal representative seeks to predicate this claim on the aircraft owner's liability statute, Iowa Code § 328.41, as interpreted in conjunction with Iowa Code section 328.1(19). In *Lamasters v. Snodgrass*, 248 Iowa 1377, 85 N.W.2d 622 (1957), this court held that these statutes fix civil responsibility on the owner of an aircraft for the negligent conduct of those persons to whom the owner entrusts the plane.

Air Exec's first argument is that the exclusive-remedy provisions of the workers' compensation laws, as set forth in Iowa Code section 85.20, preclude Julia Dean's estate from recovering for damages caused by the action of a coemployee in the course of her employment. As her personal representative argues, however, under the act, the workers' compensation remedy is only made exclusive as to claims against the injured party's employer or coemployees who are not grossly negligent. *See Price v. King*, 259 Iowa 921, 924, 146 N.W.2d 328, 330 (1966). As to all other parties, the act provides:

[If injury] is caused under circumstances creating a legal liability against some person, other than the employee's employer or any employee of such employer ... the employee ... may take proceedings against the employer for compensation, and the employee or, in case of death, the employee's legal representative may also maintain an action against such third party for damages.

Iowa Code § 85.22. The act does not provide immunity to third parties. Moreover, because the immunity that is provided to employers and coemployees is based on a quid pro quo not applicable to parties in the position of Air Exec, there is no basis for implying a similar immunity on their behalf.

Because the workers' compensation laws do not immunize third parties from tort claims by injured employees, we may not look to that source in determining the responsibility of Air Exec. We look instead to the purposes of the aircraft owner's liability statute. We must determine whether there is any indication that the broadly stated liability which that statute imposes turns on the negligence of the operator or the liability of the operator. We conclude, as did the district court, that it turns on the negligence of the operator.

Our cases involving the owner's liability statute for motor vehicles are somewhat instructive. Initially, in *Maine v. James Maine & Sons*, 198 Iowa 1278, 201 N.W. 20 (1924), we adopted a position similar to that being advocated by Air Exec. We held that, by analogy to agency principles, the interspousal immunity of a husband driver against suit by his wife inured to the benefit of an automobile owner sued by the wife under the owner's liability statute. The rationale of the *Maine* decision was disputed, however, in *Lind v. Eddy*, 232 Iowa 1328, 6 N.W.2d 427 (1942), in which this court stated:

If the legislature, in enacting the statute, intended to create an agency relation, the borrower or user is an agent only in the restricted sense, to the limited extent that the owner is liable for the damage done by his car through the negligence of the driver.... The owner was made liable by legislative fiat in cases where no agency, master and servant or other relationship

existed through which the negligence of the driver could be imputed to the owner. *Id.* at 1336, 6 N.W.2d at 431.

In the later case of *Stuart v. Pilgrim,* 247 Iowa 709, 74 N.W.2d 212 (1956), we discussed the observations made in the *Lind* case and further stated:

> It is evident that the principal-and-agent theory is unsound, and if followed finds in the statute something which is not there and leads to undesirable results. It is neither necessary nor wise to go beyond the language of the statute itself to determine its meaning, when its wording is clear.

*Id.* at 716, 74 N.W.2d at 217.[1] For reasons discussed in the *Lind* and *Stuart* cases, it would appear illogical for an owner's liability statute to impose a general liability by legislative fiat without regard to the relationship between the operator and the owner and yet permit defenses by the owner that depend on relationships that play no role in creating the statutory liability. As observed by a federal appellate court:

> an immunity from liability does not mean that a person did not commit a negligent, harmful act. It only means that for certain policy reasons liability is precluded against that person. In the interest of compensation to the victim, it should not be presumed that the immunity from liability given to the negligent person is carried over to others whom the victim can sue. Rather, the presumption should be the other way. Thus, unless the purpose of the immunity would be thwarted by carrying it over to others, suit against the others will lie.

*Davis v. Harrod,* 407 F.2d 1280, 1284 (D.C.Cir.1969).

A case that is very much in point with the present dispute is *Baugh v. Rogers,* 24 Cal.2d 200, 148 P.2d 633 (1944). In that case, a domestic employee of a physician was struck by an automobile driven by her employer but owned by a third party. The car owner was sued under the California owner's liability statute and presented a defense based on the driver's workers' compensation immunity. In rejecting that effort, the California Supreme Court stated:

> It has long since been determined that the purpose of the Legislature in enacting [the owner's liability statute] was to change the common law rule of bailment and to impose upon the bailor-owner a liability for the imputed negligence of the operator, to whom he has entrusted the possession and control of his vehicle, which, *as between the owner and the injured person, is direct and unconditional within the limits set.*
>
> . . . .
>
> Defendants further argue in support of their contention that only when negligence of the operator is actionable against him is it imputable to the owner under [the owner's liability statute], that the liability created by that section is analogous to that of a master for the acts of his servant under the doctrine of respondeat superior and "just as the liability of the master is dependent upon the liability of the servant so is the liability of the owner dependent upon the liability of his bailee." However, from the limited analogy pointed out by the courts of this state, *it does not follow that inappropriate incidents of the doctrine of respondeat superior can be attributed to the statutory relationship.*
>
> In contending that the defendant Rogers' negligence is nonactionable it is apparent that defendants use the term "nonactionable" only in the limited sense that recovery for such negligence from the defendant Rogers by court action is barred by the Labor Code, in that by its provisions the employer's sole liability for the employee's injury is workmen's compensation and the exclusive remedy therefor is an application to the Industrial Accident Commission. Obviously the character of the act itself is not damnum absque injuria or otherwise inherently nonactionable.... *The special*

---

1. It appears that the agency analogy employed in the *Maine* case was not only inappropriate, it was also not based on agency law as it exists today. Under the currently prevailing view, defenses personal to the agent are not ordinarily available to the principal when the latter's liability is based on the doctrine of respondeat superior. Restatement (Second) of Agency § 217(b)(ii) (1957).

*defense of the negligent operator, based on the business relationship and status of the operator and the plaintiff, and the provisions of the Workmen's Compensation Law, is not available to the owner. It is the negligence of the operator, and not his liability or status, which is imputed to the owner. The negligence being imputed, the liability therefor is his own.*

*Id.* at 208–09, 211–13, 148 P.2d at 638, 640–41 (citations omitted) (emphasis added). Other cases that appear to be consistent with this view include: *D.C. Rent–A–Car Co. v. Cochran,* 463 A.2d 696, 698–99 (D.C.1983); *Abrams v. Sinon,* 44 Mich.App. 166, 168–69, 205 N.W.2d 295, 297 (1973); *Shore v. Minneapolis Auto Auction, Inc.,* 410 N.W.2d 862, 864–65 (Minn.App.1987); *Altman v. Sanders,* 267 N.C. 158, 161, 148 S.E.2d 21, 24–25 (1966).

We find that, based on principles established both under our own law and the well-reasoned decisions of other jurisdictions, the district court correctly ruled that any immunity contained in the workers' compensation laws is not available to Air Exec. The district court's order is affirmed.

**AFFIRMED.**